606 So.2d 869 (1992)
STATE of Louisiana, Appellee,
v.
Thomas D. JEFFERSON, Appellant.
No. 24076-KA.
Court of Appeal of Louisiana, Second Circuit.
September 23, 1992.
*870 Robert S. Tew, Monroe, for appellant.
Richard Ieyoub, Atty. Gen., Jerry Jones, Dist. Atty., Charles Cook, Asst. Dist. Atty., Monroe, for appellee.
Before SEXTON, LINDSAY and BROWN, JJ.
BROWN, Judge.
The defendant, Thomas D. Jefferson, was charged by a bill of information with armed robbery, in violation of LSA-R.S. 14:64. Defendant was tried by jury, found guilty as charged, and sentenced to serve sixteen (16) years at hard labor without benefit of probation, parole, or suspension of sentence. On appeal defendant claims the guilty verdict was not supported by sufficient evidence and that his sentence was excessive. Determining that this appeal has no merit, we affirm the conviction and sentence.

FACTS
Shortly after 8:00 P.M. on February 2, 1991, a black male, described by witnesses as short and heavy-set, entered the Kettle Restaurant in Monroe, Louisiana. The man sat down in the booth closest to the cash register. Cheryl Herzog, a waitress at the restaurant, took his to go order. The man then walked over to the cashier, Mary Youngblood, who was in the process *871 of giving change to two young boys. The man showed Ms. Youngblood a long, blue, company type check, drawn on Premier Bank, and made payable to Thomas Jefferson and asked if she could cash it. When Ms. Youngblood said she could not cash a two-party check, the man pulled out a small caliber revolver. Seeing the revolver, Ms. Youngblood, six months pregnant, stepped back, tripped and fell to the floor. The man reached into the register, removed some money and fled north across the road from the restaurant in the direction of the Harvester Trailer Park.
During its investigation, the Monroe Police Department learned that a black male named Thomas Darryl Jefferson resided at the Harvester Trailer Park. This was the same trailer park which the suspect had run toward the night of the robbery. The police also learned that a young woman named Christa Graves owned the trailer and resided there with Jefferson.
Police officers went to the trailer to speak with Ms. Graves. At the trailer, the officers confronted Jefferson, took him into custody and advised him of his rights. Ms. Graves voluntarily consented to a search of her trailer. Inside, the police found a small caliber revolver, which defendant later stated that he owned. The police also discovered a wallet, identified by Ms. Graves as belonging to the defendant. Inside the wallet was a long, blue, Premier Bank check made payable to Thomas Jefferson.
The defendant was identified in a photo lineup by Cheryl Herzog, the waitress who had taken his initial order, as the perpetrator of the robbery. Defendant was placed under arrest and charged with armed robbery. Defendant's first trial in May 1991 resulted in a mistrial when the jury was unable to agree on a verdict.[1] Thereafter, defendant was tried by jury on September 9-10, 1991 and found guilty as charged. On November 5, 1991, the trial court sentenced defendant to sixteen (16) years at hard labor without benefit of probation, parole, or suspension of sentence.

DISCUSSION

A. RELEVANT REVIEW STANDARDS
In the first assignment of error, defendant argues that the evidence introduced at trial was not sufficient to support a finding of guilt beyond a reasonable doubt. Therefore, defendant argues that his conviction should be set aside.

1. REASONABLE DOUBT STANDARD
The United States Supreme Court has explicitly held that "the Due Process Clause of the Fourteenth Amendment protects each person accused of a crime against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." Cage v. Louisiana, 498 U.S. 39, ___, 111 S.Ct. 328, 329, 112 L.Ed.2d 339, 341 (1990); In re Winship, 397 U.S. 358, 368, 90 S.Ct. 1068, 1075, 25 L.Ed.2d 368, 377-78 (1970). This reasonable doubt standard "plays a vital role in the American scheme of criminal procedure." Cage, 498 U.S. at ___, 111 S.Ct. at 329; Winship, 397 U.S. at 363, 90 S.Ct. at 1072, 25 L.Ed.2d at 375. Among other things, "[i]t is a prime instrument for reducing the risk of convictions resting on factual error." Id.
The requirement of proof beyond a reasonable doubt has this vital role in our criminal procedure for cogent reasons. The accused during a criminal prosecution has at stake interests of immense importance, both because of the possibility that he may lose his liberty upon conviction and because he would be stigmatized by the conviction. Accordingly, a society that values the good name and freedom of every individual should not condemn a man for commission of a crime when there is reasonable doubt about his guilt. Winship, supra. Moreover, use of the reasonable doubt standard is indispensable to command the respect and confidence of the *872 community in applications of the criminal law. To this end, the reasonable doubt standard is irreplaceable, for it impresses on the trier of fact the necessity to be sure of the facts in issue. Id.

2. SUFFICIENCY OF EVIDENCE STANDARD
Sufficiency of the evidence review involves assessment by the courts of whether the evidence adduced at trial could support any rational determination of guilty beyond a reasonable doubt. United States v. Powell, 469 U.S. 57, 67, 105 S.Ct. 471, 478, 83 L.Ed.2d 461 (1984); Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In reviewing whether there is sufficient evidence to support a conviction, an appellate court in Louisiana is controlled by the standard enunciated by the United States Supreme Court in Jackson v. Virginia, supra, and its progeny. This federal constitutional standard, which was adopted by the Louisiana Legislature's enactment of LSA-C.Cr.P. Art 821 pertaining to post-verdict motions for acquittal based on insufficiency of evidence, requires the appellate court to determine if the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt. State v. Romero, 574 So.2d 330 (La.1990); State v. Mussall, 523 So.2d 1305, 1308 (La.1988); State v. Captville, 448 So.2d 676, 678 (La.1984); State v. Bellamy, 599 So.2d 326, 329 (La.App. 2 Cir.1992); State v. Scott, 588 So.2d 1365, 1367 (La.App. 2 Cir.1991). This standard of appellate review applies to all evidence, direct and circumstantial. State v. Wright, 445 So.2d 1198 (La.1984); Bellamy, supra.

B. SUFFICIENCY OF EVIDENCE
In the instant case, defendant has been connected to this armed robbery by the testimony of several eyewitnesses and by supporting tangible evidence. The Louisiana Legislature has defined armed robbery as the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. LSA-R.S. 14:64; State v. Wheatley, 550 So.2d 724 (La.App. 2d Cir.1989), writ denied, 569 So.2d 979 (La.1990). On appeal, the defendant contends that the evidence was not sufficient to sustain a conviction.
In his brief, defendant correctly states that the cashier, Mary Youngblood, could not identify him as the person who committed the robbery. At trial, Ms. Youngblood stated that she was looking at two boys who had asked for change and was not looking at the assailant when he approached the cash register. Ms. Youngblood also stated that once the assailant pointed his gun she never looked up but instead saw only the gun. She testified that when the gun was drawn, she became afraid, stepped back, bumped into a helium tank under the register and fell to the floor. The fall prevented her from observing the man.
Ms. Youngblood described the gun used during the robbery as a small revolver. She knew the difference between a revolver and an automatic and testified that the gun shown to her in court (defendant's gun seized from the trailer) resembled the type of gun used in the robbery. She also described the check presented to her by the robber as long, blue, drawn on Premier Bank, and made payable to Thomas Jefferson. She further stated that the check seized from defendant's wallet appeared to be the same as that she observed during the crime.
Another witness, Cheryl Herzog, the waitress who took the assailant's order, identified defendant in a pre-trial photo line-up as the man who committed the robbery. Although the police report stated that she described the robber as not having a mustache, Ms. Herzog testified that when the photo line-up was presented to her, she told the police only that she could not remember whether the man had any facial hair. She stated that she had no role in preparing the police report and that in this respect it was in error.
Ms. Herzog testified that she had a good look at defendant's face during the robbery. *873 When asked on cross-examination how she failed to notice a mustache, Ms. Herzog explained that she was looking at the man's eyes. During the trial she again positively identified defendant in court as the man who robbed the Kettle Restaurant.
Positive identification by a witness is sufficient to support the defendant's conviction. State v. Thomas, 589 So.2d 555, 568 (La.App. 1st Cir.1991). In State v. Brown, 588 So.2d 1317 (La.App. 2d Cir. 1991), writ denied, 592 So.2d 1298 (La. 1992), this court held that the victim's positive identification of the defendant's face from a photo lineup was sufficient to support a conviction for armed robbery despite discrepancy in the victim's estimate that her assailant was four or five inches taller than the defendant's actual height. Furthermore, this court in State v. Woods, 444 So.2d 1332 (La.App. 2d Cir.1984), held that there was sufficient evidence to convict the defendant of armed robbery despite contradictory testimony by state witnesses concerning the robber's attire and the day of the week on which the robbery occurred.
Ada Bamburg, a customer at the Kettle Restaurant on the night of the robbery, corroborated Ms. Youngblood's testimony concerning the robber's desire to cash a check while Ms. Youngblood was giving change to two young boys. She also described the gun used during the robbery as a small revolver and stated she knew the difference between a revolver and an automatic.
Although she was unable to make an identification from a police photo lineup, at trial Ms. Bamburg identified the defendant and stated she was certain the defendant was the robber. She testified that she told the police she could not identify the robber by the photos, but that if she saw him again in person, she would know him, explaining, "it was the man I saw and not the picture."
An in-court identification is admissible provided the source of the identification is independently based. State v. Brown, supra. Furthermore, a pre-trial identification is not a prerequisite to an in-court identification. State v. Long, 408 So.2d 1221 (La.1982); State v. Evans, 512 So.2d 615 (La.App. 2d Cir.1987), writ denied, 516 So.2d 367 (La.1988); State v. Johnson, 598 So.2d 1152, 1155 (La.App. 1st Cir.), writ denied, 600 So.2d 676 (La.1992).
Moreover, the jurisprudence of this state holds that a witness's failure to identify an accused at a pre-trial lineup does not render a later in-court identification inadmissible and that a failure to identify a suspect at a pre-trial lineup is a matter which addresses itself to the weight of the witness's testimony rather than its admissibility. State v. Wright, 410 So.2d 1092, 1098 (La.1982); State v. Johnson, supra.
Defendant does not question the admissibility of either Ms. Bamburg's or Ms. Herzog's testimony or their in-court identification. However, defendant argues that Ms. Herzog's and Ms. Bamburg's in-court identification and testimony cannot support his conviction due to the fact that neither could identify him prior to trial. (This was incorrect in so far as Ms. Herzog is concerned.) To this extent, defendant presents an argument regarding the sufficiency of the evidence, i.e., the in-court identifications, and not their admissibility.
The defendant's attack on the in-court identification of the defendant by Ms. Bamburg and Ms. Herzog addresses itself to the credibility of their testimony. While this court's authority to review extends to a determination of whether the evidence is minimally sufficient to have afforded due process, such judicial power of review does not extend to credibility determinations. State v. Trosclair, 443 So.2d 1098 (La. 1983), cert. dismissed, 468 U.S. 1205, 104 S.Ct. 3593, 82 L.Ed.2d 889 (1984). Credibility determinations are the province of the trier of fact. Bellamy, supra. Thus, in the absence of internal contradictions or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier, is sufficient to support the requisite factual conclusions. State v. Emerick, 499 So.2d 195 (La.App. 2d Cir.1986). By convicting Jefferson, the jury choose to give credence to Ms. Bamburg's and Ms. Herzog's in-court identification and testimony. *874 This court finds no reason to question the jury's finding.
In the instant case, Ms. Bamburg stated she observed the defendant enter the restaurant, place an order, and take a seat not more than five or six feet from her position. She watched him as he approached the register and ultimately committed the robbery. She estimated the time period which he was within her view to be about five or ten minutes. After the robbery, she described the culprit to police as being a black male, five foot eight or nine, and heavy-set. Ms. Herzog got a good look at defendant's face when she took his order.
The eyewitnesses did not significantly disagree in their descriptions of the robber or state that the robber did not have any facial hair. They simply stated they did not remember whether the assailant had facial hair or not. Both Ms. Herzog and Ms. Bamburg positively identified defendant at trial and did not reveal any uncertainty about defendant's identity.
Additionally, the long, blue, Premier Bank check made payable to Thomas Jefferson and recovered from defendant's wallet matches the description of the check presented to Mary Youngblood by the robber. The gun seized from defendant's residence matches the description given by the witnesses of the gun used in the robbery. Finally, the trailer where defendant resided was located in the nearby trailer park which the robber ran toward after the crime was committed.
Given all the evidence adduced at trial, this court finds that a reasonable trier of fact viewing the evidence in the light most favorable to the prosecution could have found beyond a reasonable doubt that the defendant was guilty of armed robbery. Therefore, this court holds that this assignment is without merit.

C. EXCESSIVENESS OF SENTENCE
Defendant asserts in his second assignment of error that the sentence imposed upon him was excessive. In particular, Jefferson argues that because he has no prior felony convictions, has a history of employment, and was only twenty-three years of age when the offense was committed, the sixteen year sentence was excessive.
As a general rule, the trial court has wide discretion to sentence within statutory limits. State v. McGraw, 597 So.2d 169, 170 (La.App. 2d Cir.1992). In exercising our appellate review, we are cognizant of the trial court's unique and advantageous position to observe the defendant, evaluate the circumstances of the crime and judge its impact on the community. Thus, absent a showing of manifest abuse of discretion, we do not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); McGraw, supra.
LSA-Const. Art. 1 § 20, however, prohibits the imposition of excessive punishment. Pursuant to this constitutional command we must review sentences when requested to determine if they are excessive. To enable this court to carry out its review function, the trial court must articulate its factual basis for the sentence. The law mandates that the trial court consider certain factors in its sentencing deliberation. LSA-C.Cr.P. Art. 894.1 provides a framework that, if followed, will clearly demonstrate that all appropriate factors were studied and why a particular sentence was imposed. The record before this court reflects that the trial court followed the criterion set out in Art. 894.1 and in stating its factual basis for the sentence. In fact, defendant admits that the trial judge properly complied with LSA-C.Cr.P. Art. 894.1. Thus, defendant's only contention on appeal is that the sentence imposed is too harsh. State v. Williams, 599 So.2d 465 (La.App. 2d Cir.1992).
After reviewing whether the trial court studied the necessary factors and stated his reasons for the sentence, the reviewing court must determine whether the sentence violates LSA-Const. Art. 1 § 20. A sentence violates LSA-Const. Art. 1 § 20 if it is grossly disproportionate to the seriousness of the offense, the circumstances of the case, or the background of the defendant or if the sentence serves as nothing more than a purposeless and needless *875 infliction of pain and suffering. State v. Cook, 598 So.2d 481, 485 (La.App. 2d Cir.1992); State v. Hudgins, 519 So.2d 400, 406 (La.App. 2d Cir.), writ denied, 521 So.2d 1143 (La.1988). A sentence is considered grossly disproportionate if the crime and punishment when considered in light of the harm done to society shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Richardson, 545 So.2d 714 (La.App. 2d Cir.1989).
As previously stated, whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. LSA-Const. Art. 1 § 20. In selecting a proper sentence, a trial judge is not limited to considering only a defendant's prior convictions and may properly review all prior criminal activity. State v. Palmer, 448 So.2d 765, 769 (La.App. 2d Cir.1984), writ denied, 452 So.2d 695 (La.1984). Moreover, a trial judge may properly consider a defendant's attitude and criminal propensities when determining the appropriate sentence. Palmer, supra. In the instant case, the trial court noted that although this was the defendant's first felony conviction, he did not have a clean record with the law. Defendant was arrested in 1989, and convicted in 1990, for unauthorized use of a movable (reduced from simple burglary). In July of 1990, he was arrested for disturbing the peace and received a $100.00 fine. In October of 1990 he was arrested for interfering with a police officer and trespassing and was sentenced to time served. The court also noted that appellant had one juvenile offense on his record for which he was given probation, but further stated that this offense was not "really held against" him.
The court noted that defendant is 24 years old (23 when offense was committed), single, and has no dependents. The trial court, commented that the victim in this case could easily have been killed, stated that the nature of the crime was serious, warranting the sentence imposed, and that a lesser sentence would deprecate the seriousness of the act.
Appellant faced a maximum sentence of 99 years for the crime of armed robbery. Under the circumstances, sixteen years is not unduly harsh or excessive and does not shock this court's sense of justice. In State v. Thomas, 468 So.2d 592 (La.App. 2d Cir.), writ denied, 474 So.2d 1303 (La.1985), this court held that the sentence of 25 years at hard labor without benefit of probation, parole, or suspension of sentence for armed robbery was not excessive, despite that defendant was 21 years old and it was his first felony offense. Also, in State v. Smith, 513 So.2d 436 (La.App. 2d Cir. 1987), this court found the sentence of 20 years at hard labor without benefit of probation, parole, or suspension of sentence for the crime of armed robbery was not excessive where defendant was a 23-year old first felony offender who, with a companion, committed armed robbery upon an elderly shopkeeper.
For the above reasons, this court finds that the sentence was not excessive.

CONCLUSION
In summary, after viewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found all the essential elements of the crime proven beyond a reasonable doubt. Furthermore, we find that the sentence imposed upon Thomas D. Jefferson not to be excessive.

DECREE
Therefore, for the reasons state above, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] The minutes show that the foreman stated the vote was 7 to 5. The direction of the vote was not stated.