BROWN, Judge.
Defendant, Charles Owens, was charged by bill of information with attempted second degree murder in violation of LSA-R.S. 14:27,14:30.1. After a trial by jury, Owens was convicted as charged and thereafter sentenced to 30 years at hard labor without the benefit of probation, parole or suspension of sentence. On appeal defendant claims that the guilty verdict was not supported by sufficient evidence and that his sentence was excessive. Finding no merit to these claims, we affirm the conviction and sentence.
FACTS
In the late evening of October 11, 1990, the victim, Don Gibbs, an off-duty Caddo Parish Sheriff’s Deputy, went to a Shreveport nightclub with a friend, Andrew McAl-ister, to celebrate McAlister’s birthday. While seated at an upstairs table, a woman walked by and bumped Gibbs’ table. Seconds later, Owens, who is also known as “Cue Dog”, approached Gibbs and stated: “What’s up?” ... “That’s my lady”, in reference to the woman who bumped into the table. Gibbs and Owens did not know each other and Gibbs testified that he did not know what provoked Owens to think he had “messed with his lady”.
A crowd gathered and defendant (Owens) said, “[Fjorget it, forget it” and turned to walk away. After going about six feet, defendant swung back around and pointed a Smith and Wesson .357 at Gibbs’ chest. Fortunately for Gibbs, as defendant fired, a bystander hit his arm, causing this first round to miss. Gibbs then pushed defendant and tried to retreat, but as defendant was falling from the push, he fired three more consecutive shots. Gibbs was *878 struck below the left knee and on the right foot. Defendant then fled the scene.
Defendant was arrested 10 days later and charged with attempted second degree murder. His trial took place on September 17-18, 1991.
DISCUSSION
I.
In the first assignment of error, defendant argues that the evidence introduced at trial was not sufficient to support a finding of guilt beyond a reasonable doubt and, in particular, that he had a specific intent to kill.
A.SPECIFIC INTENT TO KILL
LSA-R.S. 14:27 provides that to attempt a crime, the defendant must commit an act tending directly towards accomplishing his object. The object of second degree murder is the “killing of a human being” under certain circumstances. Thus, the elements of the crime of attempted second degree murder are the specific intent to kill and an overt act in furtherance of this object. State v. Butler, 322 So.2d 189 (La.1975); State v. Guin, 444 So.2d 625 (La. App.3d Cir.1983).
Whether Owens had the specific intent to kill when he shot Gibbs is a critical element of attempted second degree murder. Specific intent is a state of mind and need not be proved as a fact; it may be inferred from the circumstances and the actions of the defendant. State v. Graham, 420 So.2d 1126 (La.1982); State v. Doby, 540 So.2d 1008 (La.App.2d Cir.), writ denied, 544 So.2d 398 (La.1989). The determination of whether the requisite intent is present in a criminal ease is for the trier of fact. State v. Huizar, 414 So.2d 741 (La.1982); State v. Dean, 528 So.2d 679 (La. App.2d Cir.1988). A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a wit ness in whole or in part. State v. Rogers, 494 So.2d 1251 (La.App.2d Cir.1986), writ denied, 499 So.2d 83 (La.1987).
B. SUFFICIENCY OF EVIDENCE STANDARD
Sufficiency of the evidence review involves assessment by the court of whether the evidence adduced at trial could support any rational determination of guilty beyond a reasonable doubt. United States v. Powell, 469 U.S. 57, 67, 105 S.Ct. 471, 478, 83 L.Ed.2d 461 (1984); Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In reviewing whether there is sufficient evidence to support a conviction, an appellate court in Louisiana is controlled by the standard enunciated by the United States Supreme Court in Jackson v. Virginia, supra, and its progeny. This federal constitutional standard, which was adopted by the Louisiana Legislature’s enactment of LSA-C.Cr.P. Art. 821 pertaining to post-verdict motions for acquittal based on insufficiency of evidence, requires the appellate court to determine if the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt. State v. Romero, 574 So.2d 330 (La.1990); State v. Mussall, 523 So.2d 1305, 1308 (La.1988); State v. Captville, 448 So.2d 676, 678 (La.1984); State v. Bellamy, 599 So.2d 326, 329 (La.App. 2 Cir.1992); State v. Scott, 588 So.2d 1365, 1367 (La.App. 2 Cir.1991). This standard of appellate review applies to all evidence, direct and circumstantial. State v. Wright, 445 So.2d 1198 (La.1984); Bellamy, supra.
C. SUFFICIENCY OF EVIDENCE
Although Owens admits that he shot Gibbs, he claims that he only aimed at his legs and never intended to seriously injure or kill. Both Gibbs and McAlister testified that Owens pointed his .357 directly at Gibbs’ chest, and, were it not for a bystander hitting Owens’ arm, the first shot would have struck Gibbs in the chest. They also testified that after Owens fired several more shots, he fled the scene. A third witness, Steven Lacy, who is co-owner and operator of the nightclub, corroborated Gibbs’ and McAlister’s testimony. It certainly can be inferred from the fact that Owens was pointing his gun at Gibbs’ *879 chest, that Owens had a specific intent to kill.
In contrast, Owens testified that he shot at the floor and only intended to hit Gibbs’ feet and legs. In addition, he stated that once he shot Gibbs, he walked over to him, pushed him over with his foot and stood over him for several seconds with his gun. This, he claims, shows that he could have easily shot Gibbs in the chest, or anywhere else, had he intended to kill him. When Owens was questioned as to why his testimony was different from Gibbs, McAlister and Lacy, he stated that they were all lying. Furthermore, Owens’ version of what transpired contradicted his initial statement to the police taken ten days following the incident, in which he denied shooting anyone at all.
The jury obviously decided to believe the testimony of Gibbs, McAlister and Lacy, and to reject Owens’ version of the incident. Defendant’s argument addresses itself to the credibility determination of the jury. While this court’s authority to review extends to questions of fact, such judicial power of review does not extend to credibility determinations. Decisions concerning credibility are the province of the trier of fact. State v. Trosclair, 443 So.2d 1098 (La.1983), cert. dismissed, 468 U.S. 1205, 104 S.Ct. 3593, 82 L.Ed.2d 889 (1984); State v. Jefferson, 606 So.2d 869 (La. App.2d Cir.1992). Thus, in the absence of internal contradictions or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier, is sufficient to support the requisite factual conclusion. State v. Jefferson, supra. We have no reason to question the jury’s finding.
II.
Defendant asserts in his second assignment of error that the 30-year sentence without benefit of probation, parole or suspension was excessive, especially since he was a first felony offender. As a general rule, the trial court has wide discretion to sentence within statutory limits. State v. McGraw, 597 So.2d 169, 170 (La. App.2d Cir.1992). In exercising our appellate review, we are cognizant of the trial court’s unique and advantageous position to observe the defendant, evaluate the circumstances of the crime and judge its impact on the community. Thus, absent a showing of manifest abuse of discretion, we do not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); McGraw, supra.
LSA-Const. Art. 1 § 20, however, prohibits the imposition of excessive punishment. Pursuant to this constitutional command, we must review sentences, when requested, to determine if they are excessive. To enable this court to carry out its review function, the trial court must articulate its factual basis for the sentence. The law mandates that the trial court consider certain factors in its sentencing deliberation. LSA-C.Cr.P. Art. 894.1 provides a framework that, if followed, will clearly demonstrate that all appropriate factors were studied and why a particular sentence was imposed. State v. Williams, 599 So.2d 465 (La.App.2d Cir.1992). The record before this court reflects that the trial court followed the criterion set out in Art. 894.1 and stated its factual basis for the sentence. In fact, defendant admits that the trial judge properly complied with' LSA-C.Cr.P. Art. 894.1. Thus, defendant’s only contention on appeal is that the sentence imposed is too harsh.
After reviewing whether the trial court studied the necessary factors and stated his reasons for the sentence, the reviewing court must determine whether the sentence violates LSA-Const. Art. 1 § 20 (1974). A sentence violates LSA-Const. Art. 1 § 20 if it is grossly disproportionate to the seriousness of the offense, the circumstances of the case, or the background of the defendant or if the sentence serves as nothing more than a purposeless and needless infliction of pain and suffering. State v. Stephens, 604 So.2d 203 (La. App.2d Cir.1992); State v. Cook, 598 So.2d 481, 485 (La.App.2d Cir.1992); State v. Hudgins, 519 So.2d 400, 406 (La.App.2d Cir.), writ denied, 521 So.2d 1143 (La.1988). A sentence is considered grossly dispropor *880 tionate if the crime and punishment, when considered in light of the harm done to society, shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Richardson, 545 So.2d 714 (La.App.2d Cir. 1989).
As previously stated, whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. LSA-Const. Art. 1 § 20 (1974). In selecting a proper sentence, a trial judge is not limited to considering only a defendant’s prior convictions and may properly review all prior criminal activity. State v. Hayes, 602 So.2d 285 (La.App.2d Cir.1992); State v. Palmer, 448 So.2d 765, 769 (La.App.2d Cir.), writ denied, 452 So.2d 695 (La.1984). Moreover, a trial judge may properly consider a defendant’s attitude and criminal propensities when determining the appropriate sentence. Palmer, supra.
Before passing sentence, the district court meticulously followed the guidelines of LSA-C'.Cr.P. Art. 894.1. The court stated that it ordered and reviewed a PSI, which revealed that Owens was 25 years old with a 9th grade education. In addition, the district court noted that Owens’ employment record was scanty. Owens had never worked at one job for more than six months. The court then went into an exhaustive review of Owens’ lengthy criminal record:
The most important aspect of this pre-sentence investigation is your criminal record. The report indicates that you have a “significant juvenile criminal record”. In addition to this, you have been arrested 17 times in the past 6 years. While arrests of themselves do not constitute a record, it is meaningful that your earliest arrest record was 1984 for shoplifting. Thereafter, you were arrested for illegally carrying a weapon and resisting an officer, simple assault, receiving stolen things, simple battery, another concealed weapon charge, simple battery; again, a concealed weapon and aggravated assault. For this last charge you were found guilty and given 30 days, suspended. At the same time you were also found guilty of simple criminal damage to property and given a 30-day suspended sentence. Next you were found guilty of simple battery and resisting an officer. Again, in 1987 you were given only 20 days for resisting an officer in a simple battery charge.
Following that, in 1988 your arrests were for resisting arrest, simple battery for which you received 10 days and a fine of $278; the aggravated assault charge was nolle prossed; also, aggravated kidnapping and aggravated burglary for which no disposition was found; illegally carrying of a weapon which merited 6 months in the parish jail, and the simple kidnapping and attempted armed robbery charges were dismissed.
Finally, in December of 1988 you were found guilty of possession of drug paraphernalia though you were charged with possession of schedule II CDS and given a six months sentence. In 1989 a second degree murder charge was nolle prossed. This leads us to the present charge brought in October, 1990.
The court then went step-by-step through the remaining guidelines of LSA-C.Cr.P. Art. 894.1. Although Owens admits in his brief that the court did comply with Art. 894.1, he argues that the court did not adequately consider that he was only 25 years old and a first felony offender.
Even though Owens is a first felony offender, his criminal history is lengthy, including several crimes against the person. In addition, the serious nature of the instant offense cannot be overlooked. Owens fired multiple shots inside a crowded building. Were it not for a stroke of fate, the victim or a bystander could have easily been killed. In reference to Owens’ character, the court stated: “Having observed you for several days on the trial of this case, this court feels your character and attitude indicate a pure disdain for society and its norms.”
CONCLUSION
Finding that the evidence presented was sufficient to support the verdict of attempted second degree murder and that the sen *881 tence imposed was not excessive, we affirm.
AFFIRMED.