680 So.2d 88 (1996)
STATE of Louisiana
v.
Jermaine SINGLETON.
No. 96-KA-203.
Court of Appeal of Louisiana, Fifth Circuit.
August 28, 1996.
*89 Harry J. Morel, Jr., District Attorney, Hahnville, for Plaintiff/Appellee.
Gregory A. Miller, Norco, for Defendant/Appellant.
Before CANNELLA and DALEY, JJ., and GARVEY, J. Pro Tem.
DALEY, Judge.
Defendant, Jermaine Singleton, assigns four errors of the trial court in its sentencing of him after his guilty plea to four counts of armed robbery, in violation of LSA-R.S. 14:64. Defendant does not appeal the underlying conviction. After thorough review of the record, we affirm the defendant's sentence.

ASSIGNMENTS OF ERROR
Defendant argues the trial court committed the following errors in his sentence:
1) The trial court had no authority to deny "good-time" eligibility to defendant;
2) The denial of "good-time" eligibility to defendant constitutes an ex post facto application of the law;
*90 3) The trial court erred in deviating upward from the Louisiana Sentencing Guidelines, resulting in an excessive sentence; and
4) The trial court failed to consider the considerable mitigating factors, resulting in the imposition of an excessive sentence.
On December 14, 1994, the St. Charles Parish District Attorney filed a bill of information charging defendant, Jermaine Singleton, with four counts of armed robbery, in violation of LSA-R.S. 14:64. The state also charged Larry Singleton, Jr. and Aric C. Lewis as codefendants. Defendant was arraigned on December 14, 1994, and entered a plea of not guilty.
On May 3, 1995, the state filed a motion to invoke the firearms sentencing provisions under LSA-C.Cr.P. art. 893.1, et seq. The trial court granted the state's motion over defendant's objection. On the same day, Singleton withdrew his former plea of not guilty, and entered a guilty plea as to all charges. The trial court held a sentencing hearing on October 23 and October 27, 1995, during which the defendant produced the testimony of several witnesses. On December 20, 1995, the trial court sentenced defendant to a term of seventeen years on each count, without benefit of parole, probation, or suspension of sentence, each count to run concurrently with the others. The court granted defendant credit for time served.
On December 27, 1995, defendant filed a motion to reconsider sentence and a motion for appeal. The trial court granted defendant's motion for appeal and denied the Motion to Reconsider Sentence. On January 9, 1996, defendant filed an amended motion to reconsider sentence. The trial court denied the amended motion on January 10, 1996.
Defendant, a seventeen year old high school student, along with his cousin, Larry Singleton, Jr., and Aric Lewis, armed robbed four individuals inside the First American Bank in Luling on the morning of December 2, 1994. Each of the three perpetrators concealed his identity by wearing a mask or other covering on his face. Defendant carried a .45 caliber chrome-plated handgun. Larry Singleton carried a twelve gauge pump shotgun with a pistol grip, and Aric Lewis had a .380 semi-automatic handgun.
The young men entered the bank with guns drawn, and ordered everyone inside to lie on the floor and threatened their lives. The perpetrators demanded money, and tellers placed $123,577 in currency from the bank's vault and teller drawers in the robbers' green knapsack and white pillowcase. The three perpetrators then left the bank. A witness working at a business across the street saw the three young men leave the bank and drive away in a grey Pontiac automobile.
Detective Al Theriot of the St. Charles Parish Sheriff's Office spotted the car shortly thereafter, and pursued it. An automobile chase followed, which ended in Ama, Louisiana when the robbers' car hit a tree. After the collision the three young men fled on foot, and were eventually apprehended by deputies. Upon searching the trunk of the car, the officers found the three guns used in the robbery, as well as the knapsack and the pillowcase containing all the money taken from the bank. On the same day, defendant, Jermaine Singleton, made a recorded statement to police, confessing his part in the robbery.

ASSIGNMENT OF ERROR ONE
In his first assignment, defendant complains that the trial court erred in designating that his sentences be served without eligibility for diminution of sentence for good behavior, or "good time." We disagree. The trial court's authority to deny eligibility for good time derives from LSA-C.Cr.P. art. 890.1, which provides:
Notwithstanding any provision of law to the contrary, if a person is convicted of or pleads guilty to a crime of violence as defined in R.S. 14:2(13) and is sentenced to imprisonment for a stated number of years or months, the sentencing court may deny or place conditions on eligibility for diminution of sentence for good behavior unless diminution of sentence is prohibited by R.S. 15:571.3(C) or (D).
Article 890.1 was enacted by Acts 1995, No. 946, and became effective on August 1, 1995, several months before defendant was sentenced. *91 Armed robbery is a crime of violence as defined in R.S. 14:2(13).
It is defendant's contention that the legislature did not intend for trial courts to have the discretion to deny good time until January 1, 1997. Defendant argues that, because the legislature specifically delayed the effective dates of certain newly amended portions of R.S. 15:571.3, its intent was to also delay the effective dates of related LSA-C.Cr.P. article 890.1. We reject this argument.
While it is true that Acts 1995, No. 1099 specifically designates January 1, 1997 as the effective date for revisions to subsections (A) and (B) of R.S. 15:571.3, subsections (C) and (D) (the portions cited in Article 890.1) are not included in that designation. In fact, subsections (C) and (D) were in effect in their present forms prior to the 1995 legislative session.

ASSIGNMENT OF ERROR TWO
Defendant here contends that because Article 890.1, granting the trial judge the discretion to restrict or deny good time eligibility, became effective after he committed the December 2, 1994 armed robberies, and after he was convicted, the article was applied ex post facto. Ex post facto application of criminal laws by the state is prohibited by Article I, Section 10 of the United States Constitution and by Article I, Section 23 of the Louisiana Constitution. An ex post facto law, by definition, is one which is "passed after the occurrence of a fact or commission of an act, which retrospectively changes the legal consequences of such fact or deed." Black's Law Dictionary, p. 520 (Rev. 5th ed. 1979).
The United States Supreme Court, in Collins v. Youngblood, 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990), determined that the constitutional prohibition against ex post facto laws is triggered only by a statute which:
... punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed ...
Collins v. Youngblood, 497 U.S. at 42, 110 S.Ct. at 2719 [quoting Beazell v. Ohio, 269 U.S. 167, 169-170, 46 S.Ct. 68, 68-69, 70 L.Ed. 216 (1925)].
In State v. Rolen, 95-0347 (La. 9/15/95, revised 11/1/95), 662 So.2d 446, 448, the Louisiana Supreme Court considered the criteria used to determine whether a law falls under the ex post facto prohibition:
For a criminal or penal law to fall within this prohibition, it "must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." Weaver v. Graham, 450 U.S. 24 [29], 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981). "Critical to relief under the Ex Post Facto Clause," Weaver observes, "is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated" Id. (Emphasis supplied). The Ex Post Facto Clause therefore assures "that persons have fair notice of potential criminal punishment and will be able to rely for their conduct on the criminal law as it exists at the time of their act." Prater v. United States Parole Comm'n, 764 F.2d 1230, 1239 (7th Cir.1985).
This court recently followed the Rolen's holding in Collins and in State v. Bodenheimer, 95-861 (La.App. 5 Cir. 11/28/95), 665 So.2d 608, 610. writ denied, 95-3011 (La. 2/9/96), 667 So.2d 539, stating:
A constitutionally prohibited ex post facto violation requires more than simply a retrospective law which alters a defendant's situation to his disadvantage. Collins, 497 U.S. at 50, 110 S.Ct. at 2723. Conversely, a retrospective change in the law is not insulated from ex post facto scrutiny merely by labeling the change a "procedural," because certain procedural changes may deprive a defendant of substantial protections in a manner constituting an ex post facto violation. Collins, 497 U.S. at 45-46, 110 S.Ct. at 2720-2721 [citing, among other cases, Beazell, 269 U.S. at 171, 46 S.Ct. at 69, and Duncan v. Missouri, 152 U.S. 377, *92 382-383, 14 S.Ct. 570, 571-572, 38 L.Ed. 485 (1894)].
In the instant case, defendant complains that the trial court's authority under Article 890.1 to deny good time altered his situation to his disadvantage; that he was eligible to earn good time credit (and thus possible early release from prison) prior to the enactment of the article, and that eligibility was taken away. Defendant does not, however, show that the new codal article makes the penalty for armed robbery more burdensome than it was at the time he committed the crimes. Defendant's sentence even without eligibility for good time is substantially less than the maximum punishment allowed under the law for the crime of armed robbery.
Good time credit is not guaranteed, but is earned through good behavior in prison. Any discretion in the assessment of good time under LSA-R.S. 15:571.3 is exercised by the director of the department of corrections, who establishes the rules and procedures as well as determines when good time has been earned by a particular inmate. Jackson v. Phelps, 506 So.2d 515, 517 (La. App. 1 Cir.1987), writ denied, State ex rel. Jackson v. Phelps, 508 So.2d 829 (La.1987). The good time of which defendant was deprived was not actual, but potential.
In support of his argument, defendant cites this court's decision in State v. Sorrell, 95-136 (La.App. 5 Cir. 5/10/95), 656 So.2d 1045, writ denied, 95-1268 (La. 6/30/95), 657 So.2d 1035. The holding in that case does not, however, support defendant's position. The defendant in Sorrell was convicted of forcible rape in 1989. He received a suspended sentence, and was placed on probation. In 1993, his probation was revoked, and he was ordered to serve the original five year sentence. He was released on good time in 1995, and was ordered, as a condition of his parole, to register as a "sex offender" under the provisions of LSA-R.S. 15:542 and 15:574.4. Sorrell filed a petition in the district court, asking that he be relieved of the registration requirement. Defendant complained that the registration statutes were enacted after his conviction, and that their application to him violated the Ex Post Facto Clause. The district court denied Sorrell's petition.
This court received the Sorrell case on remand from the Louisiana Supreme Court. A panel of this court affirmed the district court's ruling, holding that the registration requirement was not ex post facto law, since it was applied as a condition of the defendant's parole, and it was authorized by statute at the time of his parole. This court stated:
The law in effect at the time of a prisoner's release governs the terms of that release rather than the law in effect at the time of entry into the good time credits program. Bancroft v. Louisiana Dept. of Corr., 93-1135 (La.App. 1 Cir. 4/8/94), 635 So.2d 738 citing Bickman v. Dees, 367 So.2d 283 (La.1978). [emphasis original].
State v. Sorrell, 656 So.2d at 1048. Based on the foregoing, we find no error in the trial court's denial of good time eligibility to defendant.

ASSIGNMENT OF ERROR THREE
By this assignment, defendant complains that the trial judge deviated upward from the recommended sentencing range in the Louisiana Sentencing Guidelines, and in doing so administered a constitutionally excessive sentence.
The Louisiana Sentencing Guidelines were repealed by the state legislature effective August 15, 1995. Additionally, LSA-C.Cr.P. art. 894.1 was amended to remove reference to the Guidelines. Acts 1995, No. 942; See also State v. Guzman, 95-444 (La.App. 5 Cir. 11/15/95), 665 So.2d 512, writ denied, 95-2853 (La. 2/28/96), 668 So.2d 366. As amended, Article 894.1 requires that the trial court state for the record the considerations taken into account and the factual basis for imposing sentence. In addition, the revision amended LSA-C.Cr.P. art. 881.4 to state, "the appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed."
In imposing sentence, the trial court gave the following reasons:
"Without ruling on whether the sentencing guidelines apply to crimes committed before those guidelines were repealed, on the *93 day that the plea was entered, I represented that absent aggravating circumstances I would sentence to a term within the sentencing guidelines range. I am going to impose the sentence using those guidelines.
The designated sentence range is five to seven and a half years for concurrent sentences and 13.12 to 15.62 for consecutive sentences. But since the District Attorney has invoked the provisions of the firearms statute, the minimum sentence is ten years. Under the guidelines I must presume that the minimum sentence is the maximum appropriate penalty if the minimum mandatory sentence exceeds the maximum designated range for a typical case. However, the presumption is not applicable here since under consecutive sentences the guidelines provided for as much as 15.62 years and the mandatory minimum is ten years.
I have therefore considered the particular circumstances of the case to determine whether I should deviate from that maximum. Because of the violence involved in this armed robbery, particularly the actual danger of death the victims were confronted with and because of the thoughtful planning which preceded this event, I have determined that it is appropriate for me to deviate from the guidelines.
The fact that you are from a family which has given you a privileged upbringing and excellent educational opportunities makes your crime even more despicable and very puzzling. The fact that you're not showing remorse is not surprising.
After careful consideration of the facts and circumstances of this case, the testimony of the witnesses at the sentencing hearing, all of the memoranda that have been submitted, and the facts and circumstances of other similar cases, I have determined that a sentence of seventeen (17) years is the appropriate sentence for you." (R., p. 566-567).
The Court was not legally bound to utilize the sentencing guidelines, but did so based on the trial judge's representation to the defendant when he pled guilty. Section 209 of the sentencing guideline sets forth the procedure for departure. It states:
1. The designated sentence range provided in the grid is appropriate for a typical case; that is, an offense committed without aggravating or mitigating circumstances ...
3. The court should depart from the designated sentence range when sufficient aggravating or mitigating circumstances are present significantly to differentiate the case from the typical case arising under the offense of conviction ...
4. When departing from the designated sentence range, the court shall:
a. pronounce a sentence which is proportional to the seriousness of the offense and the offender's criminal history; and
b. state for the record the reasons for the departure which shall specify the mitigating or aggravating circumstances, and the factual basis therefor.
Subsection B identifies nineteen aggravating circumstances. The trial judge enumerates aggravated circumstances which satisfy two of the categories: number six, the offender used threats of or actual violence in the commission of the offense and number nineteen, circumstances which distinguish the case from the typical case of the offense of conviction.
The jurisprudence in effect while the guidelines were still in place required that the trial court consider the guidelines. The court then had the complete discretion to reject the guidelines and impose any sentence which was not constitutionally excessive, provided it stated for the record the considerations taken into account and the factual basis for the imposition of sentence. State v. Smith, 93-0402 (La. 7/5/94), 639 So.2d 237. If these provisions were met, the reviewing court was limited to the question of constitutional excessiveness.
In the instant case, the trial judge's statement that she had considered the guidelines and that she would deviate from them presupposes consideration of the guidelines. State v. Guzman, 665 So.2d at 515. Further, the court noted the shocking nature of the *94 offense and the physical danger in which defendant placed the victims. The trial judge took into account the evidence produced during the extensive sentencing hearing. Defendant produced several witnesses, including an expert in clinical psychology. During the course of the hearing, a great deal of factual testimony regarding the robberies was introduced. The defendant and his accomplices threatened to do bodily harm and robbed four tellers in a bank of over $128,000.00. Their breach of the peace was extreme. It is apparent that the judge's decision was well-informed.
The trial court has satisfied the sentencing requirements under both the old guidelines and the new guidelines set forth under the revised Article 894.1. It only remains for this court, then, to consider the issue of constitutional excessiveness. Both the United States and Louisiana constitutions prohibit the imposition of excessive or cruel punishment. U.S. Const.Amend. 8; La. Const. of 1974, Art. I, Sect. 20. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Lobato, 603 So.2d 739 (La.1992), on subsequent appeal, 621 So.2d 103 (La.App. 2 Cir.1993); State v. Munoz, 575 So.2d 848 (Cir.1991), writ denied, 577 So.2d 1009 (La. 1991).
In reviewing a sentence for excessiveness, the court of appeal must consider the punishment and crime in light of the harm to society and gauge whether the penalty is so disproportionate as to shock its sense of justice, recognizing at the same time the wide discretion afforded the trial judge in determining a sentence. State v. Davis, 449 So.2d 452 (La.1984); State v. Jackson, 597 So.2d 1188 (La.App. 5 Cir.1992). A sentence may be reviewed for excessiveness even though it is well within the statutory range. State v. Cann, 471 So.2d 701, 703 (La.1985).
Defendant's sentences are well below the maximum sentence of ninety-nine years as prescribed by LSA-R.S. 14:64. They are in keeping with armed robbery sentences in other cases where the defendants were first time convicted felons. See State v. Jefferson, 606 So.2d 869 (La.App. 2 Cir.1992); State v. Hawkins, 572 So.2d 108 (La.App. 1 Cir.1990); and State v. Selders, 520 So.2d 1227 (La.App. 5 Cir.1988).
Based on the foregoing, we find that defendant's sentence is not constitutionally excessive.

ASSIGNMENT OF ERROR FOUR
Defendant here contends that the trial court failed to adhere to the Louisiana Sentencing Guidelines in that it overlooked various mitigating factors in his case. Factors that should be considered by the trial court in imposing sentence include the seriousness of the crime, the facts surrounding the offense, the offender's personal background and criminal record, the likelihood that the offender will commit another crime and the offender's rehabilitation potential. State v. Bailey, 549 So.2d 414 (La.App. 5 Cir.1989). As discussed above, the trial judge stated that she considered many of these factors in sentencing defendant.
This court has held that the trial judge need not state for the record consideration of each aggravating or mitigating circumstance enumerated in the sentencing guidelines, but that the record must nevertheless reflect that the judge did consider the guidelines in formulating the defendant's sentence. State v. Lee, 600 So.2d 796 (La.App. 5 Cir.1992); State v. Williams, 591 So.2d 1252 (La.App. 5 Cir.1991). The record in the instant case shows that the trial court complied with the both the old guidelines and the guidelines in the revised version of Article 894.1.
Defendant complains that the trial court failed to consider his youth (age seventeen at the time of the crime), his cooperation with authorities, and the fact that he had no prior convictions. Each of these facts was adduced at the sentencing hearing. The judge stated when she sentenced defendant that she had considered the evidence produced at the sentencing hearing. Considering the foregoing, this assignment of error merits no consideration.
Finally, we find no errors patent on the face of the record[1].
*95 Accordingly, we affirm defendant's sentences as given by the trial court.
AFFIRMED.
NOTES
[1] See State v. Oliveaux, 312 So.2d 337 (La.1975), and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Further, when a defendant has entered a guilty plea, the error patent review includes a determination of whether the defendant was properly "Boykinized". State v. Godejohn, 425 So.2d 750 (La.1983).