754 So.2d 429 (2000)
STATE of Louisiana, Appellee,
v.
Melvin Cornelius JAMES, Appellant.
No. 33,262-KA.
Court of Appeal of Louisiana, Second Circuit.
March 10, 2000.
*431 Louisiana Appellate Project by Peggy J. Sullivan, Lewis Allen Jones, Gina Leigh Spann, Ruston, Counsel for Appellant.
Richard Ieyoub, Attorney General, Robert W. Levy, District Attorney, Stephen K. Hearn, Jr., Assistant District Attorney, Counsel for Appellee.
Before NORRIS, STEWART and PEATROSS, JJ.
STEWART, J.
Following a jury trial, Melvin Cornelius James, the defendant, was convicted of armed robbery in violation of La. R.S. 14:64. The trial court sentenced the defendant to serve sixteen and one-half years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. The defendant now appeals his conviction and sentence. We affirm.

FACTS
On October 7, 1998, sometime after lunch, the defendant entered Liberty Loans in Ruston, Louisiana where Shannon Pritchard, a loan officer, and Brandy Farrar, the manager, were working. The defendant asked if he could use the telephone. Pritchard told the defendant that he could not use the telephone because it was against Liberty Loans' policy. Afterwards, the defendant left Liberty Loans. About 30 or 45 minutes later, the defendant returned to Liberty Loans and asked if Pritchard or Farrar knew a particular individual. When Pritchard and Farrar told the defendant that they did not, he again left Liberty Loans. Approximately 15 minutes later, the defendant returned to Liberty Loans and inquired about the qualifications for a loan. Pritchard told the defendant the qualifications, and the defendant then asked to fill out a loan application. Pritchard went to the first loan booth, and the defendant sat on the opposite side of the table. Pritchard was sitting three or four feet from the defendant during the interview. Pritchard testified that it took approximately 30 to 35 minutes to fill out a loan application and conduct the interview.
Pritchard then entered the information she received from the defendant into her computer and attempted to obtain a credit history. Pritchard received a response that the social security number given by the defendant was issued to a deceased person. At that point, the defendant gave Pritchard a different social security number. When Pritchard entered that number into the computer, she was unable to pull up any information on the defendant. The defendant remained in Liberty Loans while Pritchard attempted to retrieve his credit history. Pritchard estimated that *432 this took approximately 15 minutes. Pritchard advised the defendant that there was a problem with his application. The defendant told Pritchard that he did not have his social security card with him because it was in his friend's car. At that point, Pritchard informed the defendant that she would not be able to process his loan application until she received the necessary information. The defendant took a seat in a chair in the front of Liberty Loans, allegedly waiting for a friend to pick him up. While the defendant was waiting, Farrar's husband entered Liberty Loans. At that point, the defendant left. Pritchard estimated that the defendant stayed in Liberty Loans for approximately one hour. Farrar's husband remained at Liberty Loans for approximately 15 minutes.
After Farrar's husband left the loan company, Pritchard and Farrar took most of the money from the cash drawers and locked it in the filing cabinet. Thereafter, the defendant returned and sat in the front of Liberty Loans. At the time, there were three or four customers in Liberty Loans. When it was almost 5:00 p.m. and the last customer was gone, Pritchard and Farrar attempted to finish making their required phone calls. The defendant walked back and forth in front of the counter before going into the first loan booth. At that time, the defendant told Pritchard and Farrar to hang up their phones and he pulled out a gun. Pritchard heard the gun click. The defendant told Pritchard to raise her hands and told Farrar to give him the money. The defendant then told Pritchard to lie on the floor facing him. Farrar placed the cash drawer on the counter. The defendant told Farrar to lie on the floor, but she objected because she was eight months pregnant. The defendant again told Farrar to lie on the floor and she did. The defendant grabbed the money off of the counter, told Pritchard and Farrar that he was going across the street, and instructed them to remain on the floor.
After Pritchard heard the defendant leave, she called 911. Pritchard gave the police a description of the defendant over the telephone. She described the defendant as a black male wearing a white T-shirt, faded blue jeans, white shoes, and a little black stocking cap. According to Pritchard, less than $250.00 was missing from the cash drawer. Following a jury trial, the defendant was convicted of armed robbery, and he was sentenced to sixteen and one-half years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.

DISCUSSION

Insufficiency of the Evidence
By his first two assignments of error, the defendant contends that the evidence was insufficient to convict him of armed robbery and that, as such, the trial court erred in denying the motions for post-verdict judgment of acquittal and for a new trial. The defendant claims that the positive identifications that were made of him at trial by the eyewitnesses, Shannon Pritchard and Brandy Farrar, were tainted. Furthermore, the defendant claims that neither eyewitness was able to make a positive identification of him as the robber based on the photographic line-up the night of the robbery.
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); *433 State v. Bosley, 29,253 (La.App.2d Cir.04/02/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
La.C.Cr.P. art. 821 provides that a motion for post-verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilt. This is a question of legal sufficiency. State v. Combs, 600 So.2d 751 (La.App. 2d Cir.1992), writ denied, 604 So.2d 973 (La.1992).
La.C.Cr.P. art. 851(1) provides that the court shall grant a motion for new trial whenever the verdict is contrary to the law and the evidence, i.e., that the evidence was insufficient to sustain the conviction. A motion for new trial presents only the issue of the weight of the evidence. Under this article, the trial court has wide discretion to determine the weight of the evidence. The refusal to grant such a motion is not subject to appellate review, except for error of law. State v. Mitchell, 26,070 (La.App.2d Cir.06/22/94), 639 So.2d 391, writ denied, 94-1981 (La.12/16/94), 648 So.2d 387; State v. Robinson, 624 So.2d 1260 (La.App. 2d Cir.1993), writ denied, 93-2899 (La.02/11/94), 634 So.2d 372; State v. Thomas, 609 So.2d 1078 (La.App. 2d Cir. 1992), writ denied, 617 So.2d 905 (La. 1993); State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983). The defendant's argument centers around the question of sufficiency of the evidence, an issue properly raised in the trial court by a motion for post-verdict judgment of acquittal under La.C.Cr.P. art. 821. State v. Korman, supra.
Under Jackson v. Virginia, supra, the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bosley, supra; State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992).
This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, supra; State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (La.1987).
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. White, 28,095 (La.App.2d Cir.05/08/96), 674 So.2d 1018, writ denied, 96-1459 (La.11/15/96), 682 So.2d 760.
In cases involving a defendant's claim that he was not the person who committed the crime, the Jackson rationale requires the state to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Brady, 414 So.2d 364 (La.1982); State v. Baker, 28,152 (La.App.2d Cir.05/8/96), 674 So.2d 1108, writ denied, 96-1909 (La.12/06/96), 684 So.2d 925.
A witness's failure to identify the suspect at a pretrial lineup is not grounds to bar the in-court identification; rather, it affects the weight of the testimony. Evidence may be introduced to explain any discrepancy. State v. Ford, 26,422 (La.App.2d Cir.09/21/94), 643 So.2d 293; State v. Chism, 591 So.2d 383 (La.App. 2d Cir.1991).
Positive identification by only one witness may be sufficient to support a defendant's conviction. State v. Davis, 27,961 (La.App.2d Cir.4/8/96), 672 So.2d 428, writ denied, 97-0383 (La.10/31/97), *434 703 So.2d 12; State v. Miller, 561 So.2d 892 (La.App. 2d Cir.1990), writ denied, 566 So.2d 983 (La.1990).
Evidence of flight, concealment, and attempt to avoid apprehension indicates consciousness of guilt. State v. Davies, 350 So.2d 586 (La.1977); State v. Daniels, 614 So.2d 97 (La.App. 2d Cir. 1993), writ denied, 619 So.2d 573 (La. 1993).
Based on the evidence presented at trial, we believe, as did the trial court, that there was sufficient evidence to convict the defendant of armed robbery. The fact that the eyewitnesses were not able to positively identify the defendant as the robber based on the photographic line-up the night of the robbery addresses the credibility of their testimony. See State v. Jefferson, 606 So.2d 869 (La.App. 2d Cir. 1992). The jury was aware that the witnesses' identifications of the defendant as the robber on the night of the robbery were not certain. The jury knew that the victims had identified a single photo of the defendant as the robber the day after the robbery. Furthermore, the jury knew that this identification occurred after the victims learned of the defendant's name and had seen a copy of his driver's license photo. Moreover, only one of the victims testified that she overheard the police discussing the type of car that the person she identified as the robber drove. The jury obviously believed that the victims' testimony was credible and accepted their identifications of the defendant. Once the victims' credibility is established, the record evidence is sufficient to negate any reasonable possibility of misidentification. State v. Jefferson, supra.
Furthermore, the defendant admitted to the police and stated in a handwritten statement that he was in Liberty Loans on the day of the robbery. The defendant further admitted that he had applied for a loan that day, although he claimed that he applied for it under his real name. The victims both testified that the only loan application that was taken on the day of the robbery was that of the defendant. Furthermore, Robert Foley, the expert forensic document examiner, testified that the person who signed the questioned document was the same person who submitted the known samples.
As well, the defendant stated in his loan application that he would provide a nine millimeter Baretta as collateral. Although the gun seized from the defendant the day after the robbery was a revolver, both witnesses testified that the weapon used by the defendant was a nine millimeter automatic.
Moreover, the defendant fled from his apartment when the police arrived there the day after the robbery. Flight may be considered as evidence of guilt. See State v. Davies, supra.
Armed robbery is defined in La. R.S. 14:64 as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation while armed with a dangerous weapon." Ordinarily, the victim's testimony, "if believed by the trier of fact," is sufficient to prove the essential elements of armed robbery, even without corroborating physical or scientific evidence. State v. Williams, 26,230 (La.App.2d Cir.09/21/94), 643 So.2d 284, writ denied, 96-0115 (La.03/29/96), 670 So.2d 1236. The production of a weapon is not necessary in an armed robbery prosecution where the state can establish through witness observations at the crime scene, all of the elements of the offense beyond a reasonable doubt, including the existence and use of a dangerous weapon. State v. Brown, 591 So.2d 791 (La.App. 5th Cir. 1991). La. R.S. 14:2 defines a dangerous weapon as "any gas, liquid or other substance or instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm."
We believe the state's assertion that all of the elements of an armed robbery were *435 present. Furthermore, the state was not required to produce the weapon used during the offense or the fingerprints of the defendant in order to establish the elements of the offense. Given all of the evidence adduced at trial, we believe that a reasonable trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found beyond a reasonable doubt that the defendant was guilty of armed robbery.
Based on our finding, we pretermit discussion of the trial court's denial of the defendant's motions for a post-verdict judgment of acquittal and for a new trial. These assignments of error are without merit.

Excessive Sentence
By this assignment of error, the defendant contends that his sentence was constitutionally excessive and that the trial court erred in denying his Motion to Reconsider. The trial court sentenced the defendant to sixteen and one-half years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. Following sentencing, the defendant made an oral motion for reconsideration of sentence. In support of said motion, the defendant stated that he had no prior arrests. The defendant further stated that although a dangerous weapon was used in the commission of the offense, there was no harm done to either of the victims. The trial court denied said motion.
The defendant contends the trial court failed to explain the "actual" violence which it considered as an aggravating circumstance. The defendant argues that there was no testimony during the trial that he committed any act of "actual" violence. Thus, the defendant contends that this was improperly considered as an aggravating circumstance. The defendant also contends that the trial court could not consider his failure to show remorse or admit to the crime as an aggravating circumstance.
La. R.S. 14:64 provides that "[w]hoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than five years and for not more than ninety-nine years, without benefit of parole, probation or suspension of sentence."
La.C.Cr.P. art. 881.1 applies to the defendant's sentence. This article precludes the defendant from presenting arguments to the court of appeal which were not presented to the trial court. In such a circumstance, the defendant is simply relegated to having the appellate court consider the bare claim of constitutional excessiveness. State v. Mims, 619 So.2d 1059 (La.1993); State v. Duncan, 30,453 (La. App.2d Cir.02/25/98), 707 So.2d 164.
In the defendant's motion to reconsider sentence, he did not complain that the trial court erred in considering his lack of remorse as an aggravating factor. The defendant also did not complain that the trial court incorrectly considered "actual" violence as an aggravating circumstance. Therefore, these arguments will not be considered on appeal and we will only consider the defendant's claim that his sentence is excessive.
Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Davis, 28,662 (La. App.2d Cir.09/25/96), 680 So.2d 1296.
A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of discretion, this court does not set aside a *436 sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Washington, 29,478 (La.App.2d Cir.04/02/97), 691 So.2d 345; State v. Henton, 28,576 (La. App.2d Cir.09/25/96), 682 So.2d 777, writ denied, 96-2590 (La.03/27/97), 692 So.2d 391.
Before making its determination, the trial court reviewed the pre-sentence investigation report. We believe that here, where there was physical harm to the victim, the record was sufficient to justify the defendant's sentence. The record reflects that the trial court considered as a mitigating factor that the defendant was a first felony offender. We also believe that the trial court correctly found that the defendant's conduct threatened great bodily harm or death to more than one person. According to the record, the defendant pointed a cocked nine millimeter automatic weapon at the victims, one of whom was a woman who was almost eight months pregnant. Furthermore, the defendant ordered the pregnant victim to lie on her stomach although she expressed that this was difficult for her to do.
We believe that the sentence established by the trial court was not excessive. It was in the lower range of the five to ninety-nine years provided for by law for the offense of armed robbery. This assignment of error is without merit.

CONCLUSION
For the foregoing reasons, we hereby affirm the defendant's conviction and sentence.
AFFIRMED.