588 So.2d 1276 (1991)
STATE of Louisiana, Appellee,
v.
Bertha SWAFFORD, Appellant.
No. 22806-KA.
Court of Appeal of Louisiana, Second Circuit.
October 30, 1991.
*1277 James E. Beal, Jonesboro, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, Walter E. May, Jr., Dist. Atty., Chris L. Bowman, Asst. Dist. Atty., Jonesboro, for appellee.
Before VICTORY, BROWN and STEWART, JJ.
BROWN, Judge.
Defendant, Bertha Swafford, was tried by jury and convicted of one count of possession of marijuana with intent to distribute and five counts of distribution of marijuana pursuant to LSA-R.S. 40:966. Thereafter she was found to be a second felony offender pursuant to LSA-R.S. 15:529.1 because of a prior conviction for possession of marijuana with intent to distribute. Defendant was sentenced as a habitual offender to serve 35 years at hard labor for her conviction on possession with intent to distribute marijuana. This 35 year sentence was to run concurrently with sentences of 5 years at hard labor for each count of distribution of marijuana. From these convictions and sentences, defendant appeals. We affirm her conviction and the 35 year sentence for possession with intent to distribute while reversing the distribution convictions.
*1278 Chief Randy McKinney of the Jonesboro Police Department received a telephone call from a confidential informant. The informant told Chief McKinney of witnessing the presence and sale of marijuana in the home of defendant earlier that night. Armed with this information Chief McKinney obtained a judicial warrant to search the home of the defendant for marijuana. Defendant was served with the warrant and informed of the intent to search her house. During the search, 5 bags of marijuana, a large bag with 50 smaller bags of marijuana, a quantity of marijuana between the mattresses of a bed, a medicine bottle containing marijuana seeds and a marijuana cigarette were seized.
When questioned, defendant admitted selling marijuana earlier that night to Kathy Cottonham, Vergie Cottonham, Buggie Red Cottonham, Lucille Davis and "Jetta". The charge of possession with intent to distribute emanated from the marijuana seized at defendant's home supported by her confession. The five counts of distribution arose solely from the confession without any further investigation or corroboration.
In her first assignment of error, defendant asserts that the prosecutor used peremptory challenges in a discriminatory manner to excuse blacks from jury service. This claim is grounded on the U.S. Constitution's 14th Amendment proscription that "No State shall ... deny to any person within its jurisdiction the equal protection of the laws."
The U.S. Supreme Court has consistently and repeatedly recognized that a "State's purposeful or deliberate denial ... on account of race of participation as jurors in the administration of justice violates the Equal Protection Clause". Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965); Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); Strauder v. West Virginia, 100 U.S. 303, 25 L.Ed. 664 (1880). Specifically the Equal Protection Clause guarantees a defendant, a prospective juror and society that peremptory challenges will not be used to exclude potential jurors solely on account of their race. Batson, supra.
In Batson v. Kentucky, supra, the U.S. Supreme Court reexamined the evidentiary burden of a criminal defendant who claims to have been denied equal protection through the State's use of peremptory challenges to exclude members of his or her race from the petit jury. The previous burden required a defendant to demonstrate a systematic removal of a particular race or group from jury panels in case after case over a substantial period of time. Swain, supra. Batson overruled this method of proof and established that "(a) defendant may make a prima facie showing of racial discrimination in the selection of the venire by relying solely on the facts concerning its selection in his case." Batson, supra. Defendant must show that from all the relevant circumstances an inference is raised that the prosecutor used peremptory challenges to exclude veniremen from the petit jury on account of race. Once a defendant presents a prima facie showing, the burden shifts to the prosecution to set out race-neutral explanations for its challenges. Batson, supra; Powers v. Ohio, ___ U.S. ___, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991).
In assessing whether a defendant has shown a prima facie case of purposeful discrimination "the trial court should consider all relevant circumstances. For example, a `pattern' of strikes against blacks included in the particular venire might give rise to an inference of discrimination. Similarly the prosecutor's questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory purpose." Batson, supra.
The record does not show the racial composition of the jury that eventually decided this case except that at least two were black. In the first panel of eighteen prospective jurors, there were five blacks and the State excused three with peremptory challenges. A Batson objection was made by defendant but no circumstances in support of the objection were argued. The defendant was black and the excused veniremen *1279 were black. Because the defense presented no reasons and two blacks were accepted on the jury from this group, the trial court did not find at that time that the circumstances supported a prima facie case of the exclusion of jurors solely on race. Therefore, the trial court did not require an explanation by the prosecutor of the challenges. Specifically, the court stated:
I agree with the State's position that there were five (blacks), two have been selected, three excused. The court does not find the prima facie showing at this time that the violation of Batson at the appropriate time if it does develop we will require the State to make an explanation of challenges used. Mr. D.A., I request thought (sic) that you make note of those reasons for your challenges and at the conclusion of juror (sic) put it of record and so the record will be complete for the court.
At the end of the questioning of the second panel of prospective jurors, the defense attorney offered no objections to the prosecutor's use of peremptory challenges. The record does not show if any blacks were selected from this panel. In the third and final panel six prospective jurors were called. Defense counsel noted on the record that two of them were black and that the State used two peremptory challenges. Nothing further was said leaving this court to presume that the two blacks were challenged.
The initial burden is on defendant to show a prima facie case of purposeful discrimination. To do so he must establish that the State used its peremptory challenges to remove black members from the jury, and that this fact, along with other relevant circumstances, created an inference that the prosecutor used peremptory challenges to exclude jurors on account of race. State v. Collier, 553 So.2d 815 (La. 1989), modified, Powers v. Ohio, supra.
Defendant was black and the State used peremptory challenges on at least three and possibly five blacks. Thus, defendant met the first part of his burden; however, he failed to set forth any other circumstances to establish a prima facie case of discrimination. No pattern of challenges against blacks was demonstrated. The prosecutor's questions in the voir dire examination refutes an inference of discriminatory purpose. The prosecutor used other peremptory challenges against other prospective jurors which were not objected to by the defense and who could thus be presumed to have not been black. No offer was made as to how many blacks were actually selected on this jury; however, out of the first group two blacks were accepted and served on the jury.
Additionally, the record reveals that in the first group of prospective jurors one of the three challenged blacks had been a neighbor of the defendant for about five years. In the third group, of the two veniremen challenged, one had read about the crime in the newspaper and had two brothers currently serving time in jail and the other knew defendant by sight and did not consider distribution of marijuana to be a serious crime. Although the prosecutor did not state reasons for the challenges, these questions and answers would indicate racially neutral motives.
At the conclusion of the jury selection process, defense counsel did not renew his Batson objection and did not request that the State put of record its reasons for the exercise of specific peremptory challenges. The trial court clearly indicated that whether a prima facie case had been made could be reurged at the conclusion of the voir dire.
Since the record is devoid of any relevant circumstances beyond the fact that defendant was black and the State challenged three or possibly five blacks, defendant failed to make out a prima facie case of purposeful discrimination. State v. Cannon, 572 So.2d 740 (La.App. 4th Cir.1990), writ denied, 575 So.2d 821 (La.1991).
In her second assignment of error, defendant claims that the trial court wrongly denied a mistrial when Chief McKinney referred to defendant's alleged commission of another crime. During the testimony of Chief McKinney, the State asked what took place after defendant was *1280 advised of her rights and the police began their search of her house. Chief McKinney responded:
After Ms. Swafford was advised of her rights at some point very near the time that we came to the residence she began to cry and telling us at that time that she didn't have any drugs in the house. That we werewe were looking without just cause basically and also at some time after that she began to tell us that there were drugs in the house.
Following this testimony, defense counsel asked that the jury be excused and thereafter moved for a mistrial claiming that Chief McKinney's reference to a false statement (the denial of drugs in the house) was testimony constituting another crime.
Defendant's exculpatory response when confronted with the search was not a reference to another crime. In fact defendant testified at trial that she did not know the drugs had been brought to her house. The exculpatory response of defendant was admissible evidence as was her later confession of guilt. Contradictory statements may be found to be inculpatory. Defendant's statements were admissible for whatever weight or inference the jury would determine.
In any event, law enforcement officers are not considered court officials, therefore, the mandatory mistrial provisions of LSA-C.Cr.P. Art. 770 are not applicable. State v. Hearold, 567 So.2d 132 (La.App.2d Cir.1990); State v. Perry, 420 So.2d 139 (La.1982), cert. denied, 461 U.S. 961, 103 S.Ct. 2438, 77 L.Ed.2d 1322 (1983); State v. Johnson, 440 So.2d 838 (La.App.2d Cir.1983). Rather, such occurrences are governed by LSA-C.Cr.P. Art. 771 and no prejudice was shown. State v. Brown, 557 So.2d 1085 (La.App.2d Cir.1990).
In her third assignment of error, defendant asserts that the trial court erred in allowing into evidence the marijuana seized by police officers over her objection. The basis for this objection is that in addition to the analyzing criminalist two other people at the crime lab had access to the evidence locker in which the marijuana was kept. Defendant argues that this multiple access destroyed the chain of custody.
The purpose of the chain of custody rule is to insure the integrity of the evidence, i.e., to prevent the evidence from being tampered with or from being lost. Bufkin v. Mid-American Indemnity Company, 528 So.2d 589 (La.App.2d Cir.1988); Schwab v. Galuszka, 463 So.2d 737 (La. App. 4th Cir.1985), writ denied 464 So.2d 1386 (La.1985), cert. denied 474 U.S. 803, 106 S.Ct. 37, 88 L.Ed.2d 30 (1985). Accordingly, before test results can be admitted in a civil or criminal proceeding the party seeking to introduce the results must lay a proper foundation by "connecting the specimen with its source, showing that it was properly labeled and preserved, properly transported for analysis, and properly taken by an authorized person, properly tested." Bufkin, supra; Swanson v. Estate of Augusta, 403 So.2d 118 (La.App. 4th Cir.1981), writ denied 407 So.2d 732 (La. 1981).
Chief McKinney testified he took all the evidence to the crime lab and delivered it to Linda Armstrong, a criminalist with the lab. Ms. Armstrong testified that the evidence submitted to the lab was marked with a case number, the date and her initials. She received the controverted evidence from Chief McKinney on May 8, 1990. She sealed it in a plastic bag, placed it in an evidence locker and did not remove it until May 9, 1990, and then only for analysis. Her analysis revealed that all the evidence submitted by Chief McKinney was marijuana. After her analysis, she resealed the evidence in its plastic bag and placed it back in the locker. In addition to herself, Ray Herd, director of the crime lab, and Susan Rutledge, another criminalist, had access to the evidence locker.
Multiple access to an evidence locker at a crime laboratory is not the sort of break in a chain of custody that would preclude its admissibility. Considering the chain of custody that was established, especially that while in the locker the evidence was sealed in a plastic bag, it was properly admissible at trial for evaluation by the jury.
*1281 In her fourth assignment of error, defendant contends that the sentence imposed by the trial court was excessive. Defendant was convicted of one count of possession of marijuana with intent to distribute for which she was sentenced to 35 years at hard labor as a habitual offender.
LSA-Const. Art. 1 § 20 prohibits the imposition of excessive punishment. Although a sentence is within the statutory limits it may still violate the defendant's constitutional right against excessive punishment. State v. Hogan, 480 So.2d 288 (La.1985). LSA-C.Cr.P. Art. 894.1 provides a framework for evaluating whether a sentence is excessive. The criteria set forth under Art. 894.1 must be weighed by the sentencing court. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the Article. State v. Smith, 433 So.2d 688 (La.1983). Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with LSA-C.Cr.P. Art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982).
The sentencing court is given wide discretion in imposing a sentence within the statutory limits and such sentence should not be set aside as excessive in the absence of a manifest abuse of discretion. State v. Square, 433 So.2d 104 (La.1983).
Defendant was 40 years of age and adjudicated a habitual offender. Less than three years before this crime defendant had been convicted of possession with intent to distribute marijuana. Defendant confessed to having sold marijuana to five people on the night of her arrest on this charge. The police recovered more than $900 in cash from the vicinity of the bedroom nightstand from which 5 bags of marijuana were found. Another 50 bags of marijuana were found hidden inside the mattress cover of defendant's bed. The trial court correctly found that there was an undue risk that defendant would commit other crimes and was in need of correctional treatment in an institution. Defendant was on active probation for possession with intent to distribute marijuana when this crime occurred. In light of the circumstances outlined by the judge and the fact that the sentence imposed was within the prescribed statutory limits, this assignment of error is without merit. We further find that the record clearly indicates that the trial court imposed this sentence independent of the other sentences. This sentence was to run concurrently with the 25 years received on the distribution counts.
As her final assignment of error, defendant asserts the evidence presented was not sufficient to support a conviction on the five counts of distribution of marijuana.
The jurisprudence of this State is well-settled that the uncorroborated confession of an accused will not of itself sustain a conviction without other proof of the commission of the crime. State v. Calloway, 199 So. 403 (La.1940); State v. Rollins, 463 So.2d 843 (La.App.2d Cir.1985); State in Interest of P.S., 459 So.2d 165 (La.App.2d Cir.1984); State v. Fuller, 446 So.2d 799 (La.App.2d Cir.1984), writ denied, 447 So.2d 1079 (La.1984).
The record reveals that three members of the Jonesboro Police Department heard defendant make statements at her home that she had sold marijuana that night to Kathy Cottonham, Vergie Cottonham, Buggie Red Cottonham, Lucille Davis and "Jetta".
Defendant was convicted on the basis of her statements made in the presence of these three Jonesboro police officers. The prosecution offered no other evidence that a crime was committed. Without some corroborating evidence that such a sale occurred, the body of the crime or corpus delicti was not proven. Therefore, defendant's convictions and sentences as to counts two through six are reversed.
For reasons assigned, AFFIRMED in part and REVERSED in part.