679 So.2d 973 (1996)
STATE of Louisiana, Appellee,
v.
Michael CALDWELL, Appellant.
No. 28514-KA.
Court of Appeal of Louisiana, Second Circuit.
August 21, 1996.
*974 Whitmeyer & Glassell by Stephen A. Glassell, Shreveport, for Appellant.
Richard Ieyoub, Attorney General, Paul Carmouche, District Attorney, W. Stanley Lockard, Assistant District Attorney, for Appellee.
Before MARVIN, BROWN and WILLIAMS, JJ.
BROWN, Judge.
A jury convicted defendant, Michael Caldwell, of second degree murder. Defendant appeals his conviction, urging three assignments of error. We affirm.

FACTS
Ronnie Bilyeu visited "the Bottoms" area of Shreveport sometime after midnight on June 8, 1993, to purchase cocaine. On this particular night, Bilyeu stopped his truck at the corner of Fannin and Christian streets. Defendant was one of several people gathered near this corner and spoke with Bilyeu concerning the sale of cocaine. Bilyeu was shot in the back and died at the scene. Exactly what happened during this brief time span was disputed. Although defendant did not testify, he presented witnesses who suggested that it was the state's eyewitness who actually shot and killed Bilyeu. Faced with conflicting testimony, the jury chose to believe the witnesses testifying for the state and found defendant guilty as charged.
Defendant appeals, asserting three errors.

DISCUSSION
Assignment of Error No. 3. The verdict finding defendant guilty of second degree murder is contrary to the law and evidence.
Defendant first argues that there was insufficient evidence to support his conviction.
An appellate court's review of facts is restricted to the standard enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); La. Const. Art. 5, § 5(C); State v. Willars, 27,394 (La. App.2d Cir. 09/27/95), 661 So.2d 673. The inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
Second degree murder, as applicable to these facts, is defined as the killing of a human being when the offender has the specific intent to kill or to inflict great bodily harm or when the offender is engaged in the perpetration or attempted perpetration of armed robbery, even though he has no intent to kill or cause great bodily harm. La.R.S. 14:30.1(A)(1) & (2). Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another by use of force or intimidation, when the offender has a dangerous weapon. La.R.S. 14:64.
This case is characterized by a lack of physical evidence. Defendant's conviction turned entirely upon the testimony of eyewitnesses who stated that defendant shot Bilyeu.
When Bilyeu arrived at the corner of Fannin and Christian, Michael Brown, also known as "Pink Panther," approached Bilyeu's truck. Bilyeu had a belt around his neck, which he intended to trade for cocaine, *975 and he had four $5 bills. After speaking briefly to Bilyeu, "Pink Panther" took the belt and walked away from the truck.
Around the time "Pink Panther" approached Bilyeu's truck, defendant also approached the truck and began to negotiate a sale to Bilyeu.
What happened next was disputed at trial. According to the state's witnesses, "Pink Panther" returned to the truck while Bilyeu and defendant talked about the drug deal, snatched one of Bilyeu's $5 bills and then walked away. Defendant and Bilyeu continued talking, though no one heard the words exchanged between them. According to the witnesses, Bilyeu attempted to drive away and defendant shot him in the back. Defendant then approached "Pink Panther" and demanded the $5 bill. The shooting emptied the corner as everyone fled the scene; however, before he left, "Pink Panther" returned to Bilyeu's truck and removed a wristwatch from the dying Bilyeu's arm.
Police found Bilyeu's body at 3:30 a.m. No weapon was ever recovered. Both "Pink Panther" and defendant were arrested in connection with Bilyeu's murder.
Although defendant did not testify, he argued that "Pink Panther" killed Bilyeu. Most of the witnesses who testified for both sides had their recollections impeached. None of defendant's witnesses claimed to have actually seen "Pink Panther" shoot Bilyeu, though several claimed to have seen him with the gun after the shooting. Defendant's brother testified that the gun used in the shooting belonged to defendant, but that defendant told "Pink Panther" after the shooting that he could keep the gun. Some of defendant's witnesses (and defendant) admitted to being or having been members of "the Bottoms Boys," a gang of small-time criminals who operated in the area where the shooting occurred.
Michael Brown ("Pink Panther"), and two other witnesses, claimed to have seen defendant shoot Bilyeu; however, each of these witnesses had previously signed affidavits, which they disavowed at trial, stating that they did not see defendant shoot Bilyeu.
The jury was forced to choose between the contradictory versions of events by evaluating the credibility of the witnesses produced by both sides. We do not review credibility decisions. Thus, because the jury found that the testimony of the prosecution's witnesses was believable, and because, if believed, it was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant committed second degree murder, we find this assignment without merit.
Defendant also urges that Michael Brown, "Pink Panther," is the real killer and that the evidence at trial established this beyond a reasonable doubt. It was defendant, not Brown, who was tried and found guilty. The issue of Brown's guilt is relevant only as it relates to whether there was sufficient evidence to convict defendant.[1]
Assignment of Error No. 1. The trial court erred in denying defendant's Batson challenges to the prosecution's use of peremptory challenges to exclude black jurors.
The defense objected immediately when the prosecution challenged four potential jurors, Shirley Baylor, Donald Bryant, Alphonso Davis and Joseph Cooke. However, after a brief colloquy with the court, the defense modified its position and stated that its Batson challenge covered the exclusion of only Bryant, Davis and Cooke.[2]
First, defendant must make a prima facie showing that the prosecution has exercised peremptory challenges on the basis of race. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Once the requisite *976 showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. The trial court must then determine whether defendant has carried his burden of proving purposeful discrimination.
To make out a prima facie case of discriminatory jury selection, defendant must first show that the prosecutor has exercised peremptory challenges to remove members of a particular race from the venire. Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). Second, defendant is entitled to rely on the fact that peremptory challenges permit those who are of a mind to discriminate to do so. Batson, supra, citing Avery v. Georgia, 345 U.S. 559, 73 S.Ct. 891, 97 L.Ed. 1244 (1953). Third, defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude venirepersons from the petit jury on account of their race. Batson, supra.
The circumstances which will raise an inference that the prosecution excused venirepersons based on race include, but are not limited to, a pattern of strikes by a prosecutor against members of a suspect class, statements or actions of the prosecutor which support an inference that the exercise of peremptory strikes was motivated by impermissible considerations, the composition of the venire and of the jury finally empaneled, and any other disparate impact upon the suspect class which is alleged to be the victim of purposeful discrimination. Id.; State v. Green, 94-0887 (La. 05/22/95), 655 So.2d 272.
Defendant showed that the state excluded several black venirepersons from the panel. We recognize, as Batson requires, that those who are of a mind to discriminate may use the peremptory process as a vehicle for doing so. The question is whether this fact, together with the surrounding circumstances, raises an inference that the prosecutor used his peremptory challenges to exclude venirepersons because of their race.
Defendant's objection related to challenges by the prosecutor of three venirepersons during the second round of questioning. The prosecutor had previously challenged three potential jurors during the first round, only one of whom was black.
A prima facie case of discriminatory jury selection is not established where a defendant shows only that blacks were excluded from the petit jury, but fails to set forth any other circumstances to support his claim of discrimination. See State v. Swafford, 588 So.2d 1276 (La.App.2d Cir.1991). In this case, the defense did not allege a pattern of challenges against blacks in later rounds of the voir dire; in fact, the defense attorney never mentioned his Batson objection again.
The prosecutor's questions and statements during the voir dire do not give rise to an inference that he acted with a discriminatory purpose. One of the three challenged venirepersons, Mr. Cooke, stated that two of his brothers-in-law were addicted to cocaine. Although the prosecutor did not state his reasons for each of the three challenges in question, he had a racially neutral reason for dismissing at least this potential juror. And, as already noted, defense counsel conceded during the voir dire that the prosecutor had sufficient reason to challenge Ms. Baylor.
After the state's peremptory challenges were exercised, two black venirepersons remained on the panel and they were eventually seated on the jury. Six jurors were peremptorily excused from the third round of voir dire; however, the record does not reflect which were challenged by the state and which were challenged by the defense, nor was there any reference to their race. Three jurors were excused peremptorily from the fourth round. Again, there is no mention of who challenged them or of their race.
The record does not contain any relevant circumstances beyond the fact that the prosecutor made three challenges to which the defense objected. We will not second-guess the trial court's determination that these facts, in the context of this particular voir dire, did not amount to a prima facie case of discriminatory exclusion of venirepersons. Therefore, defendant has failed to make out a prima facie case of discrimination. See State v. Swafford, 588 So.2d at 1279.
*977 Assignment of Error No. 2. The trial court erred in sustaining the state's objection to defendant's effort to elicit testimony concerning the content of the recorded statement given by defendant to detectives shortly after his arrest.
While cross-examining Detective Malone, defense counsel attempted to question him about the substance of a statement given by defendant after his arrest. Defense counsel sought to elicit from Detective Malone defendant's assertion that Michael Brown ("Pink Panther") grabbed the gun from defendant's pocket and used it to shoot Bilyeu. The trial court sustained the state's objection, ruling that defendant's statement was inadmissible hearsay.
Defendant argues that his statement was admissible in its entirety pursuant to La.R.S. 15:450 and that he should have been allowed to question Det. Malone regarding the statement.[3] Defendant also contends that the statement is admissible by virtue of La.C.E. Art. 801(D)(2)(a), which provides that a party's own statement offered against him is not hearsay.
Defendant's arguments are without merit. The state did not offer into evidence any statement given by defendant. La.R.S. 15:450 was enacted to insure completeness. Succession of Smith v. Kavanaugh, Pierson & Talley, 513 So.2d 1138 (La.1987). Its intent is that the state, in offering a defendant's statement, may not mislead the jury as to its true meaning by selecting and excluding parts. State v. Haynes, 291 So.2d 771, citing State v. Smith, 144 La. 801, 81 So. 320 (1919). Thus, the state can not edit a confession to make it more inculpatory. State v. Loyd, 455 So.2d 687 (La.App.2d Cir. 1984), writ denied, 461 So.2d 313 (La.1984). The question of whether defendant may prevent the state from editing his statement to make it more incriminating, however, is separate and distinct from the issue of whether defendant may introduce that statement for his own purposes.
In this case, the state did not use any part of defendant's statement. Defendant wanted to use his self-serving statement in lieu of testifying and thus avoid being subject to cross-examination.
Louisiana courts have long forbidden defendants from introducing pre-trial self-serving statements. Such statements are impermissible because they allow defendant to testify without taking the witness stand and without running the risk of impeachment on cross-examination. State v. McDonald, 387 So.2d 1116 (La.1980); State v. Melerine, 236 La. 930, 109 So.2d 471 (1959). These statements are inadmissible hearsay. State v. Walters, 25,587 (La.App.2d Cir. 01/19/94), 630 So.2d 1371, rev. denied, 95-0422 (La. 06/16/95), 655 So.2d 340; State v. Hooker, 623 So.2d 178 (La.App.2d Cir.1993).
Defendant's reliance upon C.E. Art. 801(D)(2)(a) is equally misplaced. This article provides that a person's own statement offered against him is not hearsay. The statement was not offered by the state against defendant. Thus, Art. 801(D)(2)(a) is inapplicable.

CONCLUSION
For the reasons set forth above, defendant's conviction is affirmed.
NOTES
[1] Defendant also asserts that the jury did not apply the law as instructed by the court in its jury charges. However, this argument was not briefed, so it is deemed abandoned. La.U.R.C.A. 2-12.4; State v. Schwartz, 354 So.2d 1332 (La. 1978); State v. Collins, 27,323 (La.App.2d Cir. 09/29/95), 661 So.2d 684.
[2] Defense counsel admitted that there was "probably ... sufficient reason" to exclude Ms. Baylor and thereby relinquished his challenge to her exclusion. During voir dire, Ms. Baylor expressed disagreement with the law of principals and with the mandatory imposition of life sentences for murder. Not surprisingly, she had been the subject of an unsuccessful challenge for cause by the prosecution.
[3] La.R.S. 15:450 provides that every confession, admission or declaration sought to be used against anyone must be used in its entirety, so that the person to be affected thereby may have the benefit of any exculpation or explanation that the whole statement may afford.