PEATROSS, J.
 

 | defendant, William Troy Manning, was convicted of aggravated burglary, in violation of La. R.S. 14:60, and attempted aggravated rape, in violation of La. R.S. 14:27 and 14:42. He was sentenced to serve 30 years at hard labor without benefit of probation, parole or suspension of sentence for each of the convictions to be served concurrently. Defendant appeals. For the reasons stated herein, Defendant’s convictions and sentences are affirmed and
 
 *1208
 
 the trial court is instructed to provide written notification to Defendant of the sex offender notification requirements outlined in La. R.S. 15:573.
 

 FACTS
 

 On the night of July 3, 2006, in Ruston, Louisiana, roommates S.M. and B.M. went to bed after staying up talking. The roommates, both in their early twenties and still nervous about living in their first house, made sure to lock the doors and windows of their house before going to bed. B.M. went to her bedroom and fell asleep while watching a movie.
 

 At some point in the early morning hours of July 4, 2006, S.M. woke up to see a man standing beside her bed. She made an attempt to get out of the bed and run, but the man grabbed her and threw her back onto the bed. The man positioned himself on top of S.M., held a sharp, shiny object to her neck and told her that he would hurt her if she did not remain quiet. The man started to remove her shorts and S.M. screamed for him not to hurt her. B.M., in a nearby bedroom, heard the commotion in S.M.’s bedroom. When B.M. turned the light on in an adjoining bathroom, she saw the man in the bed on top of S.M. B.M. yelled for the man to get off of her roommate, and |.¿eventually B.M. was able to get the man
 
 off of
 
 S.M. by hitting him with her fist. In the ensuing struggle, S.M. grabbed the sharp object and began stabbing the man with it. The man eventually broke free and moved toward the front door he had left open in the living room. B.M. and S.M. caught the man again, another struggled ensued and S.M. stabbed the man again. As the man broke free, his shirt was ripped and his green John Deere hat fell off. The man exited through the front door and ran west from the women’s home. B.M. and S.M. observed the man walking with a limp. S.M. also realized that the sharp object that the man had used to restrain her, and that she later used to stab him, was a gold fork she had left in her kitchen sink.
 

 B.M. called the sheriffs office for assistance. While waiting for the sheriff deputies to arrive, B.M. attempted to secure the house. As she walked through the house, B.M. noticed that the aircondition-ing unit had been removed from one of the windows and that the window was left open.
 

 Lieutenant Greg Franklin of the Lincoln Parish Sheriffs Office was dispatched to the women’s home where he took an initial statement from the victims. The women described the perpetrator as a white male in his mid-thirties, with a height between 5 feet 4 inches and 5 feet 7 inches. The man was unshaven, had bad teeth and was balding, yet had greasy dirty blonde shoulder-length hair. He was wearing pants and a dark T-shirt. Lt. Franklin gave the description to dispatch and a “Be On the Lookout” order was issued to officers in the area. While securing the scene, Lt. Franklin noticed a Bud Light beer can on top of a window screen on the ground next to the running ah* conditioning unit.
 

 hJnvestigator George Webb of the Lincoln Parish Sheriffs Office was called to the scene. He noticed footprints and scarred paint on the windowsill of the window that once held the air conditioning unit. He also took photos of the crime scene and dusted the area for latent fingerprints. On hearing the description of the perpetrator, Investigator Webb believed that Defendant, who he knew lived less than a mile away because of previous incidents, matched the description. He asked another deputy, Brad Wall, to make contact with Defendant at his home.
 

 The following day, July 5, 2006, Investigator Webb showed B.M. and S.M. a photo lineup of suspects matching their description of the perpetrator. B.M. could not make an identification. S.M., on the other
 
 *1209
 
 hand, identified Defendant — stating that she was 99 percent sure that Defendant was the perpetrator. S.M. told Investigator Webb that she would be absolutely certain that Defendant was the perpetrator if she heard his voice. Investigator Webb played a tape recording of Defendant’s voice, and S.M. stated that she was certain that Defendant was the perpetrator.
 

 Investigator Webb subsequently obtained an arrest warrant for Defendant on July 6, 2006; however, because Defendant could not be found, the warrant was not executed until eight days later, on July 12, 2006, at which time Defendant turned himself in at the Sheriffs Office.
 

 After informing Defendant of his
 
 Miranda
 
 rights, Investigator Webb interviewed Defendant who told Investigator Webb that he owned a John Deere hat similar to the one left by the perpetrator and that he had lost the hat near the victim’s home. Defendant further related that he owned a pair |4of boots that made footprints similar to the print left in the windowsill, that he was drunk the night of the incident and may have been drinking Bud Light. Finally, Defendant told the investigator that he wore a partial plate of dentures that was missing front teeth and had an injury in his right knee that caused him to limp. Investigator Webb asked Defendant to remove his shirt and then Investigator Webb observed scratch marks and puncture wounds around Defendant’s neck.
 

 Defendant was subsequently indicted for the offenses of aggravated burglary, a violation of La. R.S. 14:60, and the attempted aggravated rape of S.M., a violation of La. R.S. 14:27 and 14:42. After a two-day trial, a jury found Defendant guilty as charged. The court ordered a presentence investigation report. Prior to imposing the sentences, the court considered statements made in the presentence investigation report and weighed aggravated and mitigating factors. The court found as aggravating factors: the seriousness of the crime and the fact that the crime involved a sex offense, the use of violence and injuries to more than one person. The court also recognized that Defendant had a lengthy criminal history, suffered from substance abuse issues and violated previous grants of probation and parole. The court found no mitigating factors.
 

 The court ultimately sentenced Defendant to serve 30 years at hard labor for the aggravated burglary conviction and to serve 30 years at hard labor for the attempted aggravated rape conviction. Each sentence was to be served concurrently with the other sentence and both sentences were to be served without the benefit of probation, parole or suspension of sentence.
 

 | ¿The court informed Defendant that his convictions involved crimes of violence, that he would have to comply with the sex offender registration requirements and that he had two years to file for post-conviction relief. This appeal ensued.
 

 DISCUSSION
 

 Assignment of Error Number One (verbatim):
 
 The conviction of Mr. Manning for aggravated burglary and attempt- ' ed aggravated rape, violated his constitutional right against double jeopardy.
 

 Defendant argues that his prosecution for the offenses of aggravated burglary and attempted aggravated rape is a violation of his protection against double jeopardy. We disagree.
 

 A person cannot twice be put in jeopardy for the same offense. U.S. Const. amend. V; La. Const. art. 1, § 15; La. C. Cr. P. art. 591;
 
 State v. Knowles,
 
 392 So.2d 651 (La.1980). Louisiana uses both the “Blockburger test” and the “same
 
 *1210
 
 evidence test” in determining whether double jeopardy exists.
 
 State v. Ceasar,
 
 37,770 (La.App. 2d Cir.10/9/03), 856 So.2d 236. In
 
 Blockburger v. United States,
 
 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the Supreme Court held that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not. Louisiana also uses the broader “same evidence” test which dictates that:
 

 If the evidence required to support a finding of guilt of one crime would also have supported conviction of the other, the two are the same offense under a plea of double jeopardy, and a defendant can be placed in jeopardy for only one.
 

 6State v. Steele,
 
 387 So.2d 1175 (La.1980);
 
 State v. Robertson,
 
 511 So.2d 1237 (La.App. 2d Cir.1987),
 
 writ denied,
 
 516 So.2d 366 (La.1988). This test depends on the proof necessary for a conviction, not the evidence that is actually presented at trial.
 
 State v. Knowles, supra,,
 
 on subsequent appeal, 395 So.2d 678 (La.1981).
 

 Aggravated burglary is defined in La. R.S. 14:60 as follows:
 

 Aggravated burglary is the unauthorized entering of any inhabited dwelling, or of any structure, water craft, or movable where a person is present, with the intent to commit a felony or any theft therein, if the offender,
 

 (1) Is armed with a dangerous weapon; or
 

 (2) After entering arms himself with a dangerous weapon; or
 

 (3) Commits a battery upon any person while in such place, or in entering or leaving such place.
 

 In order to prove aggravated burglary, therefore, the state must prove beyond a reasonable doubt that the defendant made an unauthorized entry into an inhabited dwelling with the intent to commit a felony or theft. In addition, the state must prove beyond a reasonable doubt the existence of one of the three aggravating factors.
 

 The crimes of aggravated burglary and attempted aggravated rape do not contain identical elements. The crime of aggravated burglary requires the element of an unauthorized entry; aggravated rape does not. The crime of attempted aggravated rape requires attempted sexual intercourse; aggravated burglary does not. Under the same evidence test, however, crimes need not be identical in elements in order for double jeopardy to apply. The crucial determination is whether the evidence necessary for a [7conviction of aggravated burglary was the same evidence necessary for a conviction of attempted aggravated rape, or vice versa.
 

 This court addressed the double jeopardy implications of a defendant charged with aggravated burglary and attempted forcible rape in
 
 State v. Lockhart,
 
 457 So.2d 176 (La.App. 2d Cir.1984). In
 
 Lockhart,
 
 the victim invited the defendant, a distant relative, into her home to use her bathroom. While in the home, the defendant attempted to rape her. The state prosecuted the defendant for aggravated burglary, and he was convicted as charged. The supreme court eventually reversed the defendant’s conviction. The court reasoned that the evidence did not show that the defendant made an unauthorized entry into the victim’s home, as is required to prove aggravated burglary.
 
 Id.
 
 In light of the reversal, the state attempted to prosecute the defendant for the attempted forcible rape of the victim. The defendant filed a motion to quash the bill of information on the grounds of double jeopardy. The trial court denied the defendant’s motion, and the defendant sought writs with this court. In reaching its decision, this court recognized that the state had tried to
 
 *1211
 
 prove aggravated burglary in the initial prosecution by showing that the defendant made an unauthorized entry in an attempt to commit a battery on the victim — the third aggravating factor for aggravated burglary. The court, after considering rape to be a “battery” under the aggravated burglary statute, held that, under the “same evidence” test of double jeopardy, evidence needed to convict the defendant of attempted forcible rape would be the same evidence needed to convict him of aggravated burglary. The prohibition against double jeopardy thus |8attached, and the state was precluded from prosecuting the defendant for the attempted forcible rape.
 

 The
 
 Lockhart
 
 holding, however, was distinguished in a later case. In
 
 State v. Robertson, supra,
 
 this court held that double jeopardy was not violated when a defendant was convicted of both aggravated burglary and aggravated rape because the facts showed that the defendant committed two separate and distinct acts. In
 
 Robertson,
 
 the defendant entered the bedroom of the victim, struck her on the head and demanded money. He left the bedroom for several minutes, returned, struck the victim twice, and raped her. In ruling that the aggravated burglary and aggravated rape were two distinct acts, this court reasoned that the aggravated burglary was complete when the defendant entered the victim’s bedroom, hit her and then demanded money. The aggravated rape, on the other hand, did not occur until the defendant returned, struck the victim twice, raped her and left. Evidence of the rape would not be needed to prove the aggravating factor of a battery for the aggravated burglary charge.
 

 Applying the above reasoning to the instant case, we conclude that double jeopardy was not violated because the evidence required to support a finding of guilt for the attempted aggravated rape charge is not needed to support a conviction for the aggravated burglary charge. First, the aggravated burglary charge could have been proven under the second aggravated factor under La. R.S. 14:60 — the defendant arming himself with a dangerous weapon after entering an inhabited dwelling. The evidence presented at trial showed that Defendant entered the victims’ home by [nremoving the air conditioning unit from a window; and, once inside, he armed himself with a gold fork from the kitchen sink. He then held the gold fork up to S.M.’s neck in an effort to restrain her as he attacked her. Under La. R.S. 14:2(3) a “dangerous weapon” includes any instrumentality which in the manner used is likely to produce great bodily harm to a person. A fork held up to S.M.’s neck in the instant case arguably constitutes a dangerous weapon. Thus, under the second aggravating factor of La. R.S. 14:60, evidence of the rape would not be needed to show that an aggravated burglary was committed.
 

 Second, the aggravated burglary charge could have also been proven by evidence of Defendant’s battery of S.M., thus making the battery to S.M. a separate and distinct battery from the attempted rape for the purposes of the aggravating factor under La. R.S. 14:60. The evidence presented at trial showed that Defendant committed a battery on S.M. when he threw her back onto the bed after she tried to escape. This battery was completed when S.M. was thrown onto the bed and the attempted aggravated rape occurred separately when Defendant positioned himself on top of S.M., held a fork to her neck, told her to remain quiet or he would hurt her and then started to remove her shorts.
 

 Unlike
 
 Lockhart,
 
 the aggravated burglary charge in this case was not dependent on the rape offense to be the aggravating factor under the statute. The evidence in
 
 *1212
 
 this case could have been used to prove that an aggravated burglary occurred because of the existence of a dangerous weapon or the 1 ^separate battery of S.M. We find no double jeopardy implications. This assignment is without merit.
 

 Assignment of Error Number Two (verbatim):
 
 The evidence was insufficient to support the conviction for attempted aggravated rape, in violation of La. R.S. 14:27 & 14:42.
 

 The question of sufficiency of evidence is properly raised by a motion for post verdict judgment of acquittal.
 
 State v. Howard,
 
 31,807 (La.App. 2d Cir.8/18/99), 746 So.2d 49,
 
 writ denied,
 
 99-2960 (La.5/5/00), 760 So.2d 1190. Although the record does not i’eflect that Defendant filed a motion for post verdict judgment of acquittal pursuant to La. C. Cr. P. art. 821, this court will consider sufficiency arguments in the absence of such a motion.
 
 State v. Henson,
 
 38,820 (La.App. 2d Cir.9/22/04), 882 So.2d 670;
 
 State v. Green,
 
 28,994 (La.App. 2d Cir.2/26/97), 691 So.2d 1273.
 

 When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under
 
 Hudson v. Louisiana,
 
 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt.
 
 State v. Hearold,
 
 603 So.2d 731 (La.1992);
 
 State v. Bosley,
 
 29,253 (La.App. 2d Cir.4/2/97), 691 So.2d 347,
 
 writ denied,
 
 97-1203 (La.10/17/97), 11701 So.2d 1333. The appellate court does not assess the credibility of witnesses or reweigh evidence.
 
 State v. Smith,
 
 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part.
 
 State v. Hill,
 
 42,025 (La.App. 2d Cir.5/9/07), 956 So.2d 758,
 
 writ denied,
 
 07-1209 (La.12/14/07), 970 So.2d 529.
 

 Aggravated Rape is defined in La. R.S. 14:42, which provides in pertinent part:
 

 A. Aggravated rape is a rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
 

 (1) When the victim resists the act to the utmost, but whose resistance is overcome by force.
 

 (2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
 

 (3) When the victim is pi-evented from resisting the act because the offender is armed with a dangerous weapon.
 

 An attempt, as defined in La. R.S. 14:27(A), occurs when: Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his objective. Thus, in order to prove attempted aggravated rape, the state would have to prove beyond a reasonable doubt that the defendant had the specific intent to and engaged in an act for the purpose of carrying out sexual intercourse without the lawful consent of the victim and the existence of one of the aggravating factors.
 

 |12In the case
 
 snb judice,
 
 Defendant argues that the evidence does not show that a sexual touching occurred that would warrant a rape conviction. He also asserts,
 
 *1213
 
 that there was no evidence that he attempted to disrobe or make any other preparations to rape S.M. According to Defendant, the evidence shows that he was “merely robbing the house, and when he woke up the victim, he was trying to keep her quiet, until he could make his escape.”
 

 The State acknowledges that no skin-to-skin sexual touching occurred between Defendant and S.M., but argues that evidence of skin-to-skin contact is not required to prove an attempted aggravated rape under
 
 State v. Fuller,
 
 514 So.2d 657 (La.App. 2d Cir.1987). In
 
 Fuller,
 
 this court concluded that the evidence supported an attempted aggravated rape conviction when the defendant had the victim pinned to the floor, his legs wrapped around her and he was attempting to remove the victim’s shorts when her neighbor intervened.
 

 After reviewing the record in this case, we conclude that the evidence presented at trial was sufficient for a rational trier of fact to find that Defendant committed an attempted aggravated rape of S.M. when he prevented her from resisting his attack by holding a fork to her neck. At trial, S.M. testified that Defendant held a sharp, shiny object to her neck as he positioned himself on top of her. She further testified that Defendant told her that he would hurt her if she did not remain quiet. He then started to remove her shorts before B.M. intervened and prevented Defendant from completing the act. S.M. also testified that she took the sharp object from 1 ^Defendant’s hand and stabbed him with it. She later recognized the object as one of her gold forks. The jury was also presented with a photograph of the bent fork at trial.
 

 Whether the fork could be deemed a dangerous weapon under La. R.S. 14:42 is a factual question for the jury to determine after considering not only the character of the weapon, but by whom, upon whom and in what manner it was used.
 
 State v. Pamilton,
 
 43,112 (La.App. 2d Cir.3/19/08), 979 So.2d 648,
 
 writ denied,
 
 08-1381 (La.2/13/09), 999 So.2d 1145. In addition, although Defendant did not penetrate S.M. or have any skin-to-skin contact with her, those circumstances are not required to prove attempted aggravated rape.
 
 State v. Fuller, supra.
 

 Ultimately, after viewing the evidence in the light most favorable to the prosecution, we find that the evidence presented at trial was sufficient for a rational juror to have found beyond a reasonable doubt that Defendant committed an attempted aggravated rape on S.M. The evidence showed that Defendant forced S.M. onto her bed, held a fork to her neck, told her to be quiet or he would hurt her and tried to remove her shorts. This assignment is without merit.
 

 Assignment of Error Number Three (verbatim):
 
 The trial court was in error to deny Mr. Manning’s objection to the state’s failure to provide discovery of its showing his photographs to the witness B.M. and her subsequent inconsistent statement.
 

 Defendant argues that the State “sandbagged” him when it did not inform him that it had shown B.M. other photos of him almost two years after the initial photographic lineup and that B.M. identified him as the perpetrator after viewing those photos. Since B.M. could not identify him at | uthe initial lineup, Defendant contends that the State had a continuing duty under La. C. Cr. P. art. 729.3 to disclose B.M.’s identification of Defendant. Defendant argues that, because of the State’s failure to disclosure the identification, he was not able to adequately cross-examine B.M. at trial.
 

 The State agrees that pictures of Defendant were shown to B.M. before his arrest and again after his arrest, but before trial, and that B.M. identified Defendant as the perpetrator in the second photo lineup.
 
 *1214
 
 The State, however, argues that no discovery violation occurred because (1) B.M.’s subsequent identification was not an inconsistent statement that would have warranted disclosure, (2) B.M. identified Defendant as the perpetrator at trial, thus making the earlier identification duplica-tive, (3) B.M. admitted at trial that she could not identify Defendant as the perpetrator at the first lineup and (4) Defendant was able to cross-examine B.M. at trial. We agree.
 

 Suppression by the prosecution of evidence favorable to an accused upon his request for such evidence violates due process where the evidence is material, either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.
 
 Brady v. Maryland,
 
 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963);
 
 State v. Barker,
 
 628 So.2d 168 (La.App. 2d Cir.1993),
 
 writ denied,
 
 93-3194 (La.3/25/94), 635 So.2d 236. The term “Brady violation” is sometimes used to refer to any breach of the broad obligation to disclose exculpatory evidence. There are three components of a true
 
 Brady
 
 claim: (1) The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; | iS(2) that evidence must have been suppressed by the state, either wilfully or inadvertently; and (3) prejudice must have ensued.
 
 State v. Garrick,
 
 03-0137 (La.4/14/04), 870 So.2d 990. A discovery violation involving the state’s failure to disclose exculpatory evidence does not require reversal as a matter of the due process clause unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different result.
 
 Id.
 

 Under La. C. Cr. P. art. 723, statements made by witnesses to the state are not discoverable. Nevertheless, the state has a duty to disclose all witness statements that are favorable to the defendant and are material and relevant in determining guilt or innocence. La. C. Cr. P. art. 718.
 

 As noted, not every failure by the state to comply with discovery rules automatically requires a reversal. Only when such a failure results in prejudice to the defendant does it constitute reversible error. In the event of the state’s failure to comply with the discovery rules, it must be determined whether the defendant was actually prejudiced by the nondisclosure and whether the trial court abused its discretion.
 
 State v. James,
 
 38,353 (La.App. 2d Cir.5/12/04), 873 So.2d 858. It is only when the defendant is lulled into a misapprehension of the strength of the state’s case through the prosecution’s failure to disclose timely or fully, and the defendant suffers prejudice when the undisclosed evidence is used against him, that basic unfairness results, which constitutes reversible error.
 
 State v. Allen,
 
 94-2262 (La.11/13/95), 663 So.2d 686. The effects of a discovery | ^violation may be remedied by effective cross-examination.
 
 State v. James, supra.
 

 At trial, the photographic lineup presented to B.M. one day after the incident was introduced into evidence. B.M. wrote on the lineup that she could not identify the perpetrator from the photographs of candidates (which included Defendant). B.M. testified that she could not identify the perpetrator from the photographs because none of the candidates were wearing caps. The State then attempted to get B.M. to identify Defendant as the perpetrator by showing her various photos taken of Defendant by Investigator Webb eight days after the incident. Defendant objected to the State’s purported identification on the grounds that, although the State provided him with the various photos during discovery, it never told him that B.M. identified him as the perpetrator after see
 
 *1215
 
 ing those photos. The State argued that, since the various photos were already introduced into evidence and had been provided in discovery, it was permitted to question B.M. about the various photos and get her to make an in-court identification. The State also argued that Defendant would be allowed to cross-examine about her seemingly inconsistent identifications.
 

 The trial court overruled Defendant’s objection. The court reasoned that, under
 
 State v. Long,
 
 408 So.2d 1221 (La.1982), the complete failure of a witness to pick out the accused at a pretrial identification proceeding did not prevent the witness from identifying the accused as the offender at trial. The court cited additional cases holding that a witness could make an in-court identification even if the witness had failed to pick the accused |17from a pretrial lineup. The failure would go to the weight of the testimony, not its admissibility.
 
 See State v. Wright,
 
 410 So.2d 1092 (La.1982);
 
 State v. Jefferson,
 
 606 So.2d 869 (La.App. 2d Cir.1992).
 

 We find no error in the ruling of the trial court. The inconsistency in B.M.’s identification of Defendant as the perpetrator was a credibility issue to be weighed by the jury. In
 
 State v. Wright, supra,
 
 a witness to a robbery was shown a photographic lineup by police officers. The witness was only tentatively able to identify the offender from the presented photographs, saying that one of the men in the photographs resembled one of the robbers. The witness could not positively identify any of the defendants as the offenders at trial. The court held that partial or tentative identification goes to the weight, rather than the admissibility of the evidence. Thus, the witness’s identification was admissible, but it was left to the jury to determine its importance when comparing it to the other evidence.
 

 Similarly, in
 
 State v. Jefferson, supra,
 
 one witness to an armed robbery could not identify the offender in one of the pictures listed in a photographic lineup. Later at trial, however, she was able to identify the defendant as the offender. During her testimony, the witness explained why she could not identify the defendant as the offender in the initial photographic lineup: “she told the police she could not identify the robber by the photos, but that if she saw him again in person, she would know him, explaining, ‘it was the man I saw and not the picture.’ ” The
 
 Jefferson
 
 court, citing
 
 Wright, supra,
 
 stated that a witness’s failure to identify an accused at a pretrial lineup does not render a later in-court identification inadmissible | isand that a failure to identify a suspect at a pretrial lineup is a matter which addresses itself to the weight of the witness’s testimony rather than its admissibility.
 
 Id.
 
 The court also said that the in-court identification of the defendant by a witness who failed to previously identify the defendant as the offender in a pretrial lineup is a credibility issue that must be resolved by the trier of fact.
 
 Id.
 

 In the present case, B.M.’s in-court identification of Defendant as the perpetrator would also be a credibility issue that would need to be weighed by the jury. Defendant could then attack B.M.’s credibility at trial under La. C.E. art. 607. The record shows that defense counsel cross-examined B.M. thoroughly on her identification of Defendant.
 

 We note that, even if the State’s failure to disclose B.M.’s subsequent identification of Defendant was a Brady or discovery rule violation and, therefore, the State had a continuing duty to disclose B.M.’s later identification to Defendant, we conclude that Defendant was not prejudiced by the State’s failure to disclose. B.M. testified that she previously could not identify De
 
 *1216
 
 fendant from the photographic lineup, but that she later identified Defendant when the assistant district attorney gave her a picture of Defendant and asked if she recognized him. She also made an in-court identification independent of any past photos she viewed. B.M. explained that her earlier problems in identifying Defendant as the offender were because the photos did not provide her with a full body view of Defendant. B.M. was also able to give an accurate and exhaustive description of Defendant as the perpetrator in the police reports soon after the incident. 11¡¡Finally, Defendant was able to cross-examine B.M. In light of these facts, we find that Defendant was not prejudiced by the State’s failure to disclose the identification of Defendant by B.M. This assignment is without merit.
 

 Assignment of Error Number Four (verbatim):
 
 The trial court was in error to sustain the state’s hearsay objection to Mr. Manning’s trial counsel questioning Investigator Webb about the statement made to him by Mr. Manning.
 

 During direct examination, the district attorney questioned Investigator Webb about his interview with Defendant. As previously mentioned, in the interview, Defendant told the investigator that he owned a hat similar to the one left at the victims’ home, that he lost his hat in front of the victims’ home, that he was in the area the night of the incident, that he had been drinking the night of the incident, that he owned boots with a footprint similar to the print found at the home, and, most importantly to this assignment, that he had fled from the police, which is why he was not arrested until eight days after the arrest warrant was issued. During cross-examination, defense counsel attempted to question Investigator Webb about additional statements made by Defendant to the investigator:
 

 DEFENSE COUNSEL
 

 Q: Okay, Officer Webb, page two of the statement, you asked the question, “The first thing I’d like to know, Troy, where have you been staying at the last few days? Where have you been?”
 

 The district attorney objected, arguing that defense counsel’s question to Investigator Webb was hearsay, and, therefore, inadmissible, because he was asking about a statement that Defendant made personally to the investigator. Defense counsel countered that he could ask the investigator about Defendant’s statements to the investigator because the State had Lpopened the door to the issue during direct examination by asking the investigator similar questions.
 

 The trial court agreed with the State, reasoning:
 

 STATE
 

 Your honor, I believe [the defendant] can — any words that have already come out of Investigator Webb’s mouth, he certainly could be questioned about but he cannot elicit any further elaboration or any further statement that would be hearsay
 
 [sic
 
 ].
 

 COURT
 

 And that’s exactly what the law says. There’s a — I’m looking under Code of Evidence, Article 801, admission by a party opponent, 801.D 2 and 3: “Admissions typically are not considered hearsay
 
 [sic
 
 ], but when a statement is offered — sought to be introduced by the party making the statement, they don’t consider that admission and it’s not admissible under those exceptions. The theory is not the trustworthiness or necessity underlying the hearsay
 
 [sic
 
 ] exception, but that the party who made the statement should not be able to object that he could not cross-examine himself and should be re-
 
 *1217
 
 quirecl to explain the statement.” And then the cases cited,
 
 State v. Ccddwell,
 
 .“The defendant attempted to introduce his self-serving statement made to officer in lieu of testifying, thus
 
 [sic
 
 ] avoid being subject to cross-examination”;
 
 Johnson [sic] v. Bosworth
 
 (phonetic), ..., same information — same type holding. Also, “A defendant may not introduce his or her recorded statement given at a police station since it’s hearsay
 
 [<sic
 
 ],”
 
 State v. Langly
 
 [sic ],.... So, I’m sustaining the objection.
 
 [1]
 

 The court further explained to defense counsel:
 

 What my ruling is, is you can cross-examine [Investigator Webb] as to anything he just said here today, but, for example, you cannot say, “Didn’t he tell you this,” “Didn’t he tell you that,” or things that — whatever he testified today, you can cross him on those, but there might be other stuff in the report. To me that violates that article.
 

 |2iWe disagree with the ruling of the trial court. La. R.S. 15:450 provides that every confession, admission or declaration sought to be used against anyone must be used in its entirety so that the person to be affected thereby may have the benefit of any exculpation or explanation that the whole statement may afford. The purpose of the statute is to ensure completeness.
 
 State v. Caldwell,
 
 28,514 (La.App. 2d Cir.8/21/96), 679 So.2d 973,
 
 writ denied,
 
 96-2314 (La.2/21/97), 688 So.2d 521. Where the state introduces portions of a defendant’s pretrial statement against him, the defendant is entitled to have the remaining portions admitted so that the jury is not misled as to the statement’s true meaning.
 
 Id.
 
 Where, on the other hand, the state
 
 has not
 
 introduced any statement of the defendant,
 
 i.e.,
 
 the state has not sought to use a statement of the defendant against him or her, the defendant may not introduce his or her own self-serving statement in lieu of testifying.
 
 Id.
 
 In such cases, the statements of a defendant are hearsay and are inadmissible.
 
 Id.
 

 The trial court in the present case cited
 
 Caldwell, supra,
 
 in support of its ruling refusing to allow defense counsel to further question the investigator regarding other portions of the statement made by Defendant. We find
 
 Caldwell
 
 to be factually distinguishable from this case. In
 
 Caldwell,
 
 a critical fact relied upon by this court in upholding the trial court’s refusal to admit the defendant’s pretrial statement was that “the state did not use any part of defendant’s statement.” The defendant in
 
 Caldwell
 
 “wanted to use his self-serving statement in lieu of testifying and thus avoid being subject to cross-examination.”
 
 Caldwell, supra.
 
 In the case
 
 sub \22iudice,
 
 unlike
 
 Caldwell,
 
 the State elicited testimony of the substance of Defendant’s pretrial statements to Investigator Webb during direct examination of the investigator, seeking to use portions of the statement against Defendant. We conclude, therefore, that La. R.S. 15:450 would permit Defendant’s further questioning of the investigator on additional portions of the statement.
 

 We further find, however, that this error does not warrant reversal of Defendant’s conviction and sentence as it did not result in a fundamentally unfair trial. The excluded portions of Defendant’s statement would have little to no bearing on the outcome of the trial in light of the other
 
 *1218
 
 evidence of guilt. Thus, this error was harmless beyond a reasonable doubt. See
 
 Rose v. Clark,
 
 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986).
 

 We find, therefore, that this assignment is also without merit.
 

 Error Patent:
 

 A review of the record reveals that the trial court did not properly inform Defendant of the sex offender notification requirements outlined in La. R.S. 15:543. Attempted aggravated rape is a sex offense under La. R.S. 15:541(14.1). La. R.S. 15:542 provides registration requirements for sex offenders. In addition, La. R.S. 15:543 requires that the trial court notify a defendant charged with a sex offense in writing of the registration requirements. Although the trial court advised Defendant at sentencing that he would have to “comply with all of the requirements of the sex offender registration and notification law, including registration, notification, and counseling,” the record does not indicate that the court complied with the | ^written notification procedure outlined in La. R.S. 15:543. Since the court did not comply with the notification procedures, a remand would typically be required.
 
 See State v. Scott,
 
 42,997 (La.App. 2d Cir.2/13/08), 975 So.2d 782. Since, however, the record indicates that the trial court verbally notified Defendant of the requirements, we direct the trial court to provide the appropriate written notice of the sex offender registration requirements to Defendant within ten days of the rendition of this opinion and to file written proof of Defendant’s receipt of such notice in the record of the proceedings.
 

 CONCLUSION
 

 For the foregoing reasons, the convictions and sentences of Defendant, William Troy Manning, are affirmed. The trial court is ordered to provide Defendant with written notification of the sex offender registration requirements within ten (10) days of the rendition of this opinion and to file in the record proof of receipt by Defendant of such notice.
 

 AFFIRMED.
 

 [1]
 

 .
 
 State v. Caldwell,
 
 28,514 (La.App. 2d Cir.8/21/96), 679 So.2d 973,
 
 writ denied,
 
 96-2314 (La.2/21/97), 688 So.2d 521;
 
 Jeansonne v. Bosworth,
 
 601 So.2d 739 (La.App. 1st Cir.1992),
 
 writ not considered,
 
 614 So.2d 75 (La.1993);
 
 State
 
 v.
 
 Langley,
 
 95-1489 (La.4/14/98), 711 So.2d 651.